STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael L. FREY, Defendant-Appellant-Petitioner.

Supreme Court

*No. 2010AP2801–CR. Oral argument April 18, 2012.*
*—Decided July 17, 2012.*

2012 WI 99

(Also reported in 817 N.W.2d 436.)

For the defendant-appellant-petitioner, there were briefs and oral argument by *Devon M. Lee,* assistant state public defender.

For the plaintiff-respondent, the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the briefs was *J.B. Van Hollen,* attorney general.

¶ 1. DAVID T. PROSSER, J. This is a review of an unpublished decision of the court of appeals, *State v. Frey,* No. 2010AP2801–CR, unpublished slip op. (Wis. Ct. App. Aug. 30, 2011) affirming the felony convictions of Michael L. Frey (Frey).

¶ 2. Frey pleaded no contest to three felonies on the morning of a scheduled trial in which he was facing six felony charges. As part of a plea bargain, the State agreed to dismiss three felony charges, but there was no agreement that the dismissed charges would be "read-in" under Wis. Stat. § 973.20(1g)(b).[1]

---

[1] All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

¶ 3. At sentencing, the Florence County Circuit Court, Leon D. Stenz, Judge, explicitly considered the dismissed charges in explaining and imposing Frey's sentence. As a result, Frey challenged the validity of the sentence. The circuit court denied Frey's motion for resentencing, and the court of appeals affirmed.

¶ 4. The issues presented here may be stated as follows:

1. May a circuit court consider dismissed charges in imposing a sentence when the defendant asserts that the charges were "dismissed outright"?

2. Did the circuit court consider a dismissed charge for more than determining Frey's character and need for incarceration and rehabilitation, entitling Frey to a new sentencing hearing?

¶ 5. We conclude that a circuit court may consider dismissed charges in imposing sentence. Nothing in this case alters that longstanding rule. The circuit court here did not use the dismissed charges for an improper purpose. In addition, we conclude that Frey had adequate opportunity to refute the purported inaccuracies of the facts underlying the dismissed charges. Therefore, we affirm the decision of the court of appeals.

## I. FACTUAL BACKGROUND

¶ 6. Michael Frey and his girlfriend moved to the Town of Aurora in Florence County in the summer of 2008. M.G. lived at Frey's home with her mother, her half-sister, and Frey. This family unit had lived together for almost 10 years. M.G.'s high school friend, A.B., occasionally visited M.G. at the Aurora home and slept there overnight.

¶ 7. In the spring of 2009, A.B. and M.G. accused Frey of sexually assaulting them at different times at the Aurora home. Both girls were 16 years old at the time. Frey was 43.

¶ 8. A.B. alleged that when she visited M.G., she would "smoke weed" with M.G. and Frey. Frey would provide the marijuana as well as pills that caused her to get tired or dizzy.

¶ 9. A.B. alleged that when she was visiting M.G. one night in early February 2009, after an evening of smoking marijuana, taking pills, and smoking cigarettes, she came downstairs from M.G.'s bedroom to get a drink in the kitchen. She alleged that Frey came up behind her, pushed her against the sink, and attacked her. A.B. alleged that Frey pushed her to the ground, flipped her onto her back, and forcibly had sexual intercourse with her. A.B. screamed and tried to get away from Frey and eventually slipped away and ran upstairs to M.G.'s room. Early the next morning she called a friend who took her home.

¶ 10. M.G. alleged that Frey would give her pills, including sleeping pills, almost every night—usually seven per night. These pills would cause M.G. to fall asleep. On March 30, 2009, Frey gave pills to M.G. causing her to fall asleep. M.G. woke up to find Frey's hand inside her pants.

¶ 11. M.G. had previously accused Frey of similar conduct, but charges were not filed after M.G. withdrew her statement to police.

¶ 12. On April 15, 2009, police obtained and executed a search warrant and discovered two baggies of marijuana and two scales, one digital and one mechanical, in Frey's home.

## II. PROCEDURAL HISTORY

¶ 13. On April 21, 2009, Michael L. Frey was charged with (1) second degree sexual assault, contrary to Wis. Stat. § 940.225(2)(a); (2) attempted second degree sexual assault, contrary to Wis. Stat. § 940.225(2)(d); (3) possession of tetrahydrocannabinols, second and subsequent, contrary to Wis. Stat. § 961.41(3g)(e); and (4) possession of drug paraphernalia, contrary to Wis. Stat. § 961.573(1).

¶ 14. At the initial appearance on April 21, 2009, the court found probable cause, reduced bail to $100,000 cash, and set the preliminary examination date.

¶ 15. A preliminary examination was held on April 28, 2009, at which both A.B. and M.G. testified.

¶ 16. On April 30, 2009, an information was filed that contained six counts:

COUNT 1: Second Degree Sexual Assault, Wis. Stat. § 940.225(2)(a)—A Class C Felony

COUNT 2: Second Degree Sexual Assault, Wis. Stat. § 940.225(2)(cm)—A Class C Felony

COUNT 3: Child Enticement, Wis. Stat. § 948.07(6)—A Class D Felony

COUNT 4: Child Enticement, Wis. Stat. § 948.07(6)—A Class D Felony

Count 5: Deliver a Controlled Substance, Wis. Stat. § 961.41(1)(h)1—A Class I Felony

COUNT 6: Deliver a Controlled Substance, Wis. Stat. § 961.41(1)(h)1—A Class I Felony

¶ 17. Counts 1, 3, and 5 related to the incident involving A.B. while counts 2, 4, and 6 related to the incident involving M.G.

¶ 18. On September 2, 2009, on the morning set for trial, the State and Frey negotiated a plea bargain. It was a last-minute agreement, as the courtroom was full of prospective jurors when the court left to take the plea in a different room.

¶ 19. The court asked Florence County District Attorney Douglas Drexler to state the plea bargain on the record. Drexler replied that, "the defendant would plead either guilty or no contest to Count Two, Count Five, and Count Six of the Information . . . . And Count One, Three, and Four would be dismissed." The parties agreed that there would be a presentence investigation and that the parties could argue about the proper sentence.

¶ 20. Frey pleaded no contest to one count of second degree sexual assault and two counts of delivery of marijuana or tetrahydrocannabinols. These were counts 2, 5, and 6 of the information. The court accepted the pleas and found Frey guilty of the three counts. The other three counts were dismissed.

¶ 21. On November 10, 2009, the circuit court sentenced Frey. Certain statements that the court made during sentencing are the issue in this appeal and are set forth in detail.

¶ 22. Frey's defense counsel, Sam Filippo, stated that "Another factor for the court to consider is the viciousness or aggravated nature of the crime. This [Count 2] was a nonviolent crime. And it was not by the use of force or threat of force." Filippo was permitted to make this argument because Count 1 had been dismissed.

¶ 23. Before imposing sentence, the court stated that it had considered the arguments of the attorneys and the statements of the parties and had reviewed several documents submitted by Frey, by M.G., and by the attorneys.

¶ 24. The court then provided a lengthy and thorough explanation for the sentence it was imposing. The court explicitly stated that it was considering: (1) The gravity and nature of the offense; (2) Frey's character and rehabilitative needs; (3) The need to protect the public; (4) Frey's criminal history; (5) Frey's drug and alcohol problem; (6) Frey's personality, character, and social traits; (7) Frey's work history; (8) Frey's mental health; (9) The presentence investigation; (10) The recommendations of defense counsel; (11) Frey's culpability; (12) The aggravated nature of this offense; (13) That Frey was responsible for the welfare of the child, having lived with her for 10 years; (14) That Frey was the only father figure M.G. ever had; (15) The ongoing nature of the offense; (16) The impact on M.G.; (17) The demeanor of the defendant; (18) Frey's age and the victims' ages; (19) Frey's intelligence; (20) Frey's remorse and cooperation; (21) That Frey avoided a trial; (22) The victim impact statements; (23) That M.G. was knocked out and drugged; (24) That there could have been a penalty enhancer; (25) That Frey manipulated the child during and after the offense; (26) Previous inappropriate text messages sent by Frey to M.G.; (27) That M.G. was unconscious because of Frey and his plan to drug her so that he could take advantage of her; and (28) Frey's previous community supervision.

¶ 25. The circuit court was very thorough in its remarks—explaining every factor that it was considering in sentencing.

¶ 26. Within the court's lengthy sentencing remarks were a few statements about other charges and incidents that are the center of this dispute:

> [T]his is Mr. Frey's fault. . . . [H]e was 43. And I think the girls were 16.

. . . .

I believe that one girl said that they were sleeping pills. . . . [W]hat would happen he would give them six or seven each night and every night just about. . . . [T]hen he would follow-up the pills with marijuana. . . . [T]he cumulative effect of these drugs and marijuana was that they would become sleepy. And I think that effect was not lost upon the defendant.

In the court's opinion that was the precise intention of the defendant, to knock them out and make them sleepy. And when they were sleeping and lost some of their control he would take advantage of them and abuse them. And also considering that the offense for which he has been charged is not the only such offense. Although the court has dismissed Count One, the sexual assault of [A.B.], I believe the court can consider that charge in determining the sentence. And I can consider uncharged offenses. And I can consider unproven offenses.

[W]hen I consider the character of the defendant . . . .

[I]t was clear what had happened with respect to [A.B.] She came to the kitchen and he attacked her and pushed her down and pulled her pants off and actually had intercourse with her forcibly. And he forced himself on her and she wasn't quite so [affected] by the drugs and all the pills that she couldn't escape. And she did eventually escape. But it is important to remember and . . . which the court gives great consideration to . . . that at that point it was a clear indication to the court that the abuse that Mr. Frey was imposing on these girls was escalating.

Once he moved from . . . the girl that he was . . . acting as a stepfather to and escalated that to her friends, that is a clear indication to the court that there is a significant problem and that Mr. Frey needs to be stopped with respect to this conduct.

370

. . . .

[H]e also used force in these cases . . . which is also a significant [aggravating] factor.

. . . .

I find it was intercourse and it was definitely intercourse with [A.B.]

. . . .

And I find that there was prior abuse[,] which is another [aggravating] factor. And I considered the allegations in Michigan. I considered the allegation[s concerning] [A.B.], which were dismissed as part of the plea agreement. And I considered the preexisting relationship between the victim and the defendant as an [aggravating] factor.

And I considered the age of the victim and the age of the defendant as an [aggravating] factor. And he was 43 and she was 16. And the type of harm, there was, in fact, force used. . . . against [A.B.] in any event. And although he wasn't convicted of that offense, once again, the court can consider that as part of his character.

. . . .

¶ 27. After this lengthy explanation, the circuit judge sentenced Frey. The court stated that there were many more aggravating circumstances than mitigating circumstances. The court believed that probation would "depreciate the seriousness of the offense" and undermine Frey's rehabilitation. The court also focused on protecting the community because Frey "has more than one victim and that he felt bold enough to molest [M.G.]'s friend [A.B.] when she was at the home." The court stated that Frey's conduct had caused "great harm" to M.G. and A.B. and their families and that Frey

must be punished. The court also mentioned rehabilitation and deterrence as factors.

¶ 28. The court imposed a sentence of 25 years imprisonment on count 2—20 years of initial confinement followed by 5 years extended supervision. The court imposed 3 years imprisonment for each of the drug counts—2 years of initial confinement and 1 year of extended supervision. The court ordered that all sentences be consecutive.

¶ 29. The court later amended the sentences for the drug counts to be 1 year of initial confinement and 2 years of extended supervision each, consecutive to each other and to the sexual assault charge.

¶ 30. Nine months later, Frey filed a motion for post-conviction relief. In that motion, Frey recounted the procedural history of the case between the filing of the information on April 30 and the plea on September 2. Frey also asserted that "In exchange for his no contest pleas, the state agreed to *dismiss outright* the remaining charges." (Emphasis added.)

¶ 31. Frey also asserted that the dismissed charges were used for improper purposes, that the court made unreasonable inferences from the facts, and that his sentence was unduly harsh and excessive.

¶ 32. On October 5, 2010, the court held a hearing on this motion. At this hearing, Frey again alleged that the charge involving A.B. had been "dismissed outright."

¶ 33. On October 29, 2010, the court denied all claims brought by Frey.

¶ 34. The court of appeals affirmed in a brief unpublished per curiam opinion. *Frey,* No. 2010AP2801–CR, unpublished slip op. The court of appeals rejected Frey's arguments that "the sentencing

court improperly exercised its discretion by focusing on a dismissed charge, drew unreasonable inferences from the facts and sentenced Frey on an erroneous belief that force was used in the sexual assault." *Id.*, ¶ 1.

¶ 35. Relying on *Elias v. State,* 93 Wis. 2d 278, 284, 286 N.W.2d 559 (1980), and *State v. Bobbitt,* 178 Wis. 2d 11, 18, 503 N.W.2d 11 (Ct. App. 1993), the court of appeals stated that the sentencing court "can consider uncharged and unproven offenses, pending charges, and even charges for which the defendant has been acquitted" in order to measure the defendant's "character and the pattern of his behavior." *Id.*, ¶ 4. The court of appeals noted when a crime is read in at sentencing, a defendant has agreed that the court can consider that offense and the State is relieved of "its obligation to establish a factual basis for the offense." *Id.* In this case, the factual basis for the offense was A.B.'s testimony at the preliminary examination.

¶ 36. The court of appeals also rejected Frey's argument regarding the inferences that the circuit court drew and Frey's construction of the statements that the circuit court made regarding the violence used against A.B.

## III. STANDARD OF REVIEW

¶ 37. Frey challenges only the sentence imposed by the circuit court. This court reviews sentencing decisions under the erroneous exercise of discretion standard. *State v. Gallion,* 2004 WI 42, ¶ 17, 270 Wis. 2d 535, 678 N.W.2d 197; *Elias,* 93 Wis. 2d at 281.

¶ 38. This court "will start with the presumption that the trial court acted reasonably." *Elias,* 93 Wis. 2d at 282. Stated differently, "sentencing decisions of the

circuit court are generally afforded a strong presumption of reasonability because the circuit court is best suited to consider the relevant factors and demeanor of the convicted defendant." *State v. Borrell,* 167 Wis. 2d 749, 781–82, 482 N.W.2d 883 (1992). "An [erroneous exercise] of discretion may be found where the trial court relied upon factors which are totally irrelevant or immaterial to the type of decision to be made." *Elias,* 93 Wis. 2d at 282.

¶ 39. This court reviews whether the trial court properly considered dismissed charges in determining the proper sentence. *See id.* at 280–83.

## IV. ANALYSIS

¶ 40. This case implicates three critical stages in a criminal prosecution: (1) plea bargaining, (2) the plea, and (3) sentencing. The defendant raises an issue that appears to focus solely on sentencing. We interpret that issue to be: May a circuit court consider charges that have been dismissed outright in imposing a sentence? The answer is yes, but the answer has implications for other stages in the prosecution.

¶ 41. The defendant contends that this court "should hold that when a circuit court approves a plea agreement in which a charge will be dismissed outright, it is also agreeing not to consider that charge at sentencing." In dealing with this suggestion, there must be no confusion about our terminology. For purposes of sentencing, this opinion makes no distinction between charges that are "dismissed" and charges that are "dismissed outright." For sentencing, they are exactly the same.

¶ 42. Wisconsin Stat. § 973.20, dealing with restitution, provides in part:

(1g) In this section:

(a) "Crime considered at sentencing" means any crime for which the defendant was convicted and any read-in crime.

(b) "Read-in crime" means any crime that is uncharged or that is dismissed as part of a plea agreement, *that the defendant agrees to be considered by the court* at the time of sentencing and that the court considers at the time of sentencing the defendant for the crime for which the defendant was convicted.

(Emphasis added.)

¶ 43. Under this restitution statute, there is a distinction between dismissed charges that the defendant agrees to have read in (read-ins) and dismissed charges that are not read in (dismissed charges). Read-in charges are acknowledged as true and are subject to restitution. They may not be prosecuted separately in the future. Dismissed charges may be considered by the court in sentencing, but they are not subject to restitution. Whether they may ever be prosecuted depends on the terms of any plea agreement and considerations of due process. For the circuit court in sentencing, there is no distinction between "dismissed" charges and charges that are purportedly "dismissed outright."

¶ 44. There are several reasons why the defendant's suggestion, that dismissed charges not be considered in sentencing, is not reasonable.

¶ 45. First, we agree with the State that a sentencing court needs the fullest amount of relevant information concerning a defendant's life and characteristics. *Williams v. New York,* 337 U.S. 241, 247 (1949). In *State v. Guzman,* 166 Wis. 2d 577, 592, 480 N.W.2d 446 (1992), this court declared that "Wisconsin has a strong public policy that the sentencing court be

provided with all relevant information." It quoted from another United States Supreme Court decision, *Wasman v. United States,* 468 U.S. 559, 563 (1984), that "[t]he sentencing court or jury must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed." In *Elias,* 93 Wis. 2d at 285, the court made an even stronger statement, declaring that it was the "responsibility" of the sentencing court "to acquire full knowledge of the character and behavior pattern of the convicted defendant before imposing sentence."

¶ 46. In sentencing, the circuit court must consider the nature of the crime, the character of the defendant, and the rights of the public. *Embry v. State,* 46 Wis. 2d 151, 157, 174 N.W.2d 521 (1970); *Elias,* 93 Wis. 2d at 284 (citing cases, including *McCleary v. State,* 49 Wis. 2d 263, 274–76, 182 N.W.2d 512 (1971)).

¶ 47. To discharge its obligation to discern a defendant's character, "[a] sentencing court may consider uncharged and unproven offenses," *State v. Leitner,* 2002 WI 77, ¶ 45, 253 Wis. 2d 449, 646 N.W.2d 341, whether or not the defendant consents to having the charge read in. Indeed, the court may consider not only "uncharged and unproven offenses" but also "facts related to offenses for which the defendant has been acquitted." *Id.; see also State v. McQuay,* 154 Wis. 2d 116, 126, 452 N.W.2d 377 (1990); *Elias,* 93 Wis. 2d at 284; *Bobbitt,* 178 Wis. 2d at 16–17.

¶ 48. Against this background, it is hard to imagine directing a court not to consider dismissed charges

unless those charges are groundless or unreliable. Agreements not to reveal "relevant and pertinent" information to a sentencing court are contrary to public policy. *Grant v. State,* 73 Wis. 2d 441, 448, 243 N.W.2d 186 (1976); *see also McQuay,* 154 Wis. 2d at 124–26. In short, the defendant's suggestion conflicts with longstanding public policy.

¶ 49. Second, the defendant's suggestion violates the principle that circuit courts may not participate in plea bargaining. *State v. Hampton,* 2004 WI 107, ¶ 27, 274 Wis. 2d 379, 683 N.W.2d 14; *State v. Williams,* 2000 WI 78, ¶ 26, 236 Wis. 2d 293, 613 N.W.2d 132; *State v. Comstock,* 168 Wis. 2d 915, 927, 485 N.W.2d 354 (1992); *State v. Erickson,* 53 Wis. 2d 474, 481, 192 N.W.2d 872 (1972); *State v. Wolfe,* 46 Wis. 2d 478, 487, 175 N.W.2d 216 (1970).

¶ 50. The defendant points to *State v. Conger,* 2010 WI 56, ¶ 3, 325 Wis. 2d 664, 797 N.W.2d 341, where the court held that a circuit court may reject a plea agreement that does not, in its view, serve the public interest. The holding in *Conger* is correctly stated but it does not follow that a plea agreement *not* rejected by the sentencing court must be endorsed by that court. In *Conger,* the court rejected a plea agreement that would have reduced charges to secure the defendant's cooperation and his plea. The court, in effect, directed the district attorney to proceed with the original charges. This action was unusual, and it involved circumstances and principles that do not apply to this defendant's plea bargain.

¶ 51. One of the critical elements of the Wisconsin plea colloquy is for the court to establish personally that

the defendant understands that the court is not bound by the terms of any plea agreement, including recommendations from the district attorney. *State v. Brown,* 2006 WI 100, ¶ 35, 293 Wis. 2d 594, 716 N.W.2d 906. This required admonition is inconsistent with the defendant's suggestion that the court must accept an agreement on dismissed charges.

¶ 52. Third, the defendant's suggestion is not practical. Once relevant, credible information about the defendant's character comes to the court's attention, it is difficult to wholly disregard it. In this case, the most serious of the dismissed charges was featured in the criminal complaint, testified to at the preliminary examination, and repeated in the information. The charge was likely reviewed as the circuit court prepared for trial. It could have been discussed in the presentence investigation after the defendant's plea.

¶ 53. In addition, the law now provides an important role for crime victims in criminal proceedings. *See* Wis. Stat. Chapter 950. For instance, the district attorney must offer victims the opportunity to confer with the district attorney about the prosecution of the case[2]; make reasonable attempts to notify victims about scheduled court proceedings[3]; and make reasonable attempts to inform victims of dismissed charges.[4] The district attorney is also required to advise a victim of the opportunity to make a statement to the court at sentencing.[5] The court, in turn, before pronouncing sentence, must inquire whether the district attorney

---

[2] Wis. Stat. § 971.095(2).

[3] Wis. Stat. § 971.095(3).

[4] Wis. Stat. § 971.095(5).

[5] Wis. Stat. § 972.14(3)(b).

has complied with these duties,[6] and determine whether a victim wishes to make a statement to the court.[7] Some victims or their surrogates do make statements. Thus, the facts surrounding dismissed charges and the impact of dismissed charges on victims are often before the court immediately before sentencing.

██ ██

¶ 54. Consequently, we think it is better practice for the court to acknowledge and discuss dismissed charges, if they are considered by the court, giving them appropriate weight and describing their relationship to a defendant's character and behavioral pattern, or to the incident that serves as the basis for a plea.[8] The defendant should be given an opportunity to explain or dispute these charges. Open discussion of the charges is consistent with the court's sentencing methodology set out in *State v. Gallion,* 270 Wis. 2d 535. It creates a record for review.

¶ 55. In sum, we reject the defendant's suggestion that the circuit court not be permitted to consider charges that are dismissed as the result of a plea bargain.

¶ 56. Having determined that the circuit court did not err in considering the dismissed charges when it sentenced Frey, we move to the issues of plea bargaining that this case raises.

---

[6] Wis. Stat. § 972.14(2m).

[7] Wis. Stat. § 972.14(3)(a).

[8] *E.g., State v. Bobbitt,* 178 Wis. 2d 11, 503 N.W.2d 11 (Ct. App. 1993)(holding that the circuit court judge could consider all the evidence surrounding a robbery, including facts related to a charge of which the defendant was acquitted, to discern the gravity of the offense).

¶ 57. Plea bargaining has become central to our criminal justice system. The United States Supreme Court highlighted this development in two recent cases, *Lafler v. Cooper*, 566 U.S. __, 132 S. Ct. 1376 (2012); and *Missouri v. Frye*, 566 U.S. __, 132 S. Ct. 1399 (2012).

> In many—perhaps most—countries of the world, American-style plea bargaining is forbidden in [serious] cases . . . . In Europe, many countries adhere to what they aptly call the "legality principle" by requiring prosecutors to charge all prosecutable offenses, which is typically incompatible with the practice of charge-bargaining. Such a system reflects an admirable belief that the law is the law, and those who break it should pay the penalty provided.

*Lafler*, 132 S. Ct. at 1397 (Scalia, J., dissenting)(internal citations omitted). In contrast, "[i]n the United States, we have plea bargaining a-plenty." *Id.*

¶ 58. A different view was voiced by the Supreme Court's majority. The Court stated that plea bargaining "is not some adjunct to the criminal justice system; it *is* the criminal justice system." *Frye*, 132 S. Ct. at 1407 (quoting Robert E. Scott & William J. Stuntz, *Plea Bargaining as Contract*, 101 Yale L.J. 1909, 1912 (1992)).

¶ 59. The gist of *Lafler* and *Frye* is that plea bargaining is so critical to our criminal justice system that it requires the effective assistance of counsel throughout the bargaining process. A defendant may now be able raise specific challenges to counsel's performance in plea bargaining even if the defendant receives a fair trial.

¶ 60. Defense counsel have many responsibilities in plea bargaining, including researching the factual basis for the offenses charged, discussing the possible

penalties the defendant faces if he does not accept a plea offer, seeking to reduce a defendant's exposure to prison, discussing a defendant's chances of success in a trial, and discussing the implications of a plea offer—including the impact that read-in offenses might have as well as the effect of dismissed charges.

¶ 61. This case gives us the opportunity to clarify how the read-in procedure and dismissed charges fit into the plea bargaining process.[9] In light of our discussion about sentencing above, we must decide "what does 'dismissed outright' mean anyway?" and whether it is a proper procedure for prosecutors and defendants to utilize. *State v. Wesley,* 2009 WI App 118, ¶ 1, 321 Wis. 2d 151, 772 N.W.2d 232.[10]

¶ 62. Dismissed charges are different from charges that are read in, as explained in paragraph 43, *supra.* Charges that are "dismissed outright" appear to some to have special significance. *Wesley,* 321 Wis. 2d 151, ¶¶ 15–16 (citing *In re Disciplinary Proceedings Against Chvala,* 2007 WI 47, 300 Wis. 2d 206, 730 N.W.2d 648). We disagree.

¶ 63. To explain, we begin with a history of the read-in procedure. This court's recent decision in *State v. Straszkowski,* 2008 WI 65, 310 Wis. 2d 259, 750 N.W.2d

---

[9] The State in oral argument before this court suggested that the read-in procedure and the term "dismissed outright" have developed as a part of the "legal folklore."

[10] In *State v. Wesley,* 2009 WI App 118, 321 Wis. 2d 151, 772 N.W.2d 232, the court of appeals reviewed a case in which the circuit court considered the substance of a charge that was "dismissed outright," and it remanded the case for a *Machner* hearing on grounds that the meaning of the plea bargain was not clear to the defendant. *See State v. Machner,* 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

835, contains a comprehensive history of the read-in procedure. We repeat some of that discussion in this case.

■■

¶ 64. The read-in procedure is not, strictly speaking, an aspect of plea bargaining. Rather, it is a sentencing mechanism that is often used in plea negotiations. *Austin v. State,* 49 Wis. 2d 727, 733, 183 N.W.2d 56 (1971).

¶ 65. *Austin* was "this court's first extensive description of Wisconsin's read-in procedure." *Straszkowski,* 310 Wis. 2d 259, ¶ 59. In *Austin,* Chief Justice E. Harold Hallows referred to the read-in procedure as being "somewhat unique to Wisconsin." *Austin,* 49 Wis. 2d at 729. The *Austin* decision begins with a discussion of *Embry,* 46 Wis. 2d at 157.

¶ 66. *Embry* involved an individual convicted at trial of fraudulent use of a Standard Oil credit card. A presentence report had revealed "other convictions *or arrests* for perjury, mail theft, forgery, con games, obtaining merchandise under false pretenses, crime against nature, theft and deceptive practices." *Id.* at 158–59 (emphasis added). This court considered whether the trial court had improperly sentenced the defendant for more than one offense because the trial court stated "you aren't being sentenced for one." *Id.* at 157. This court rejected the defendant's argument alleging an improper sentence, and determined that, in context, the statement was referring to the trial court's proper consideration of "the nature of the crime, the character of the accused, and the rights of the public" and whether the crime was "an isolated act or a pattern of conduct." *Id.*

¶ 67. The *Embry* court then engaged in a discussion of the read-in procedure:

 This procedure must be distinguished from a practice in this state, especially in Milwaukee, of charging a multiple offender with two or more offenses for which the evidence is most conclusive and bringing the judge's attention to additional uncharged offenses prior to sentencing. Upon agreement between the state and the accused, the judge may take these offenses into consideration and the prosecution agrees not to prosecute. It is expected the uncharged crimes will influence the length of the sentence for the crime or crimes the defendant has been found guilty of or to which he has [pled] guilty. The advantage of this technique to the accused is that he can clean his slate of several uncharged crimes with the safety of only receiving at the most the maximum sentence on the one or two crimes of which he is convicted.

*Id.* at 157–58.

¶ 68. Thus, when the State and a defendant agree that charges will be read in, those charges are expected to be considered in sentencing, *State v. Floyd,* 2000 WI 14, ¶ 27, 232 Wis. 2d 767, 606 N.W.2d 155, with the understanding that the read-in charges could increase the sentence up to the maximum that the defendant could receive for the conviction in exchange for the promise not to prosecute those additional offenses.

¶ 69. Whether utilized as a part of plea bargaining or at sentencing after trial, the read-in procedure has benefits for both the State and for a defendant.

¶ 70. The State preserves precious prosecutorial resources by not prosecuting other charges, while having the defendant agree that the trial court may consider uncharged or unproven offenses with the understanding that this consideration could increase the defendant's sentence.

¶ 71. The defendant, in turn, "can clean his slate of several uncharged crimes with the safety of only receiving at the most the maximum sentence" on the crimes of which he is convicted *and* receive immunity from future prosecution of any read-in offense. *Embry,* 46 Wis. 2d at 158.

¶ 72. The promise by the prosecutor not to prosecute the read-in charges in the future is an essential component to a read-in. This bar to future prosecution is protected by due process. *Austin,* 49 Wis. 2d at 733, 736; *State v. Drown,* 2011 WI App 53, ¶ 14, 332 Wis. 2d 765, 797 N.W.2d 919.

¶ 73. In exchange for this benefit, the defendant exposes himself to the likelihood of a higher sentence within the sentencing range and the additional possibility of restitution for the offenses that are "read-in." Wisconsin Stat. § 973.20 requires that the sentencing judge order partial or full restitution for the crime of which a defendant was convicted and *for any read-in crime. See also Straszkowski,* 310 Wis. 2d 259, ¶¶ 81–87.

¶ 74. Both parties may receive benefits from a read-in at sentencing and may negotiate such a procedure either as a part of a plea bargain or as part of sentencing. Also, both parties give something up by accepting a read-in procedure—the State agrees not to prosecute other crimes and a defendant risks greater restitution and a higher sentence.

¶ 75. There is less clarity about charges that are dismissed.

¶ 76. Courts have found the term "dismissed outright" to be ambiguous. *Wesley,* 321 Wis. 2d 151, ¶ 17. Because "[t]he interpretation of plea agreements is

rooted in contract law," *id.,* ¶ 12, "dismissed outright" might mean several things depending on the parties intended bargain: (1) The State might dismiss the charge with prejudice and agree not to refer to the underlying facts at sentencing; (2) The State might dismiss the charge with prejudice and the parties agree that either party could comment on the underlying facts at sentencing; (3) The State might move to dismiss charges and recommend that the court not consider the dismissed charges as aggravating factors. *Id.,* ¶ 17; *McQuay,* 154 Wis. 2d at 119. Each of these interpretations has been recognized as a possible interpretation of charges dismissed outright.

¶ 77. In the context of interpreting plea bargains under contract law, dismissed charges do not have a static meaning. They are a product of the parties' negotiations and they mean what the parties intend them to mean.

¶ 78. The one obvious and immutable exception to this principle is that a plea agreement involving one or more dismissed charges cannot limit what the judge may consider at sentencing. *McQuay,* 154 Wis. 2d 116; *Grant,* 73 Wis. 2d at 448. Such agreements are contrary to public policy. *Elias,* 93 Wis. 2d at 285 ("At the sentencing stage of a criminal proceeding there is no way that pertinent factors relating to the defendant's character and behavioral pattern can be immunized by a plea agreement between the defendant and the state.").

¶ 79. A plea agreement might require the district attorney to *recommend* that the circuit court not consider the dismissed charge to be an aggravating factor. The plea agreement might require the district attorney

to acknowledge the unreliability of a dismissed charge, or not mention a dismissed charge at all. The plea agreement might incorporate a commitment not to prosecute a dismissed charge. Conversely, the agreement might permit each party to argue the relevance of a dismissed charge as the party deems appropriate. *See Wesley*, 321 Wis. 2d 151, ¶ 17.

■

¶ 80. These agreements do not limit the circuit court's ability to consider dismissed charges. Rather, they embody the commitments that the prosecutor and the defendant, via defense counsel, make to each other, including the prosecutor's recommendations, range of arguments, and collateral commitments. In plea bargaining, defense counsel has a duty to assure that the defendant understands and approves the plea agreement.

¶ 81. In analyzing the specific plea bargain in this case, Frey does not contend that the State breached the plea agreement in any way.

¶ 82. The parties placed the plea agreement on the record before the court accepted the plea. *Austin,* 49 Wis. 2d at 734. The transcript of the exchange reads as follows:

> [THE COURT]: [W]hat is the nature of the plea agreement?
>
> MR. DREXLER: Your Honor, the agreement would be that the defendant would plead either guilty or no contest to Count Two, Count Five, and Count Six of the Information. And Counts One—
>
> THE COURT: Hold on, Mr. Drexler. Let me get the document. Find the Information.
>
> THE CLERK: (Looking through the file.)

THE COURT: Go ahead. Count One.

MR. DREXLER: Count Two would be [pled] to and Count Five and Six would be [pled] to. And Count One, Three, and Four would be dismissed.

THE COURT: And is that your understanding, Mr. Filippo?

MR. FILIPPO: Yes.

THE COURT: And is that how you want to proceed, Mr. Filippo?

THE DEFENDANT: Yes.

¶ 83. As noted, Frey does not claim that the district attorney breached the plea agreement. In fact, in oral argument Frey's counsel claimed that the district attorney and trial counsel were on the same page regarding the agreement and that the district attorney did not mention the dismissed charges. At sentencing, the district attorney focused his remarks on the aggravated nature of the crime against M.G.—that Frey acted as a father to her but then gave her drugs and abused her. The district attorney made only a brief reference to "taking advantage of the situation" after providing "those girls" drugs.

¶ 84. We see no reason to fault the district attorney for his role in the Frey plea bargain.

¶ 85. This shifts the focus to his defense counsel. But we don't see a problem with defense counsel either.

¶ 86. We are in a new dynamic after *Lafler* and *Frye*. Defense counsel are likely to face new responsibilities in the plea bargaining process and new vulnerability as well. The two cases leave many issues unresolved, including what conduct might be viewed as

deficient performance and what remedies will be afforded to defendants who receive ineffective assistance.

¶ 87. Defense counsel can avoid many potential problems by creating a record. In drafting plea agreements, defense counsel and district attorneys should be clear as to what they mean in terms of their personal commitments with regard to defendants. In addition, defense counsel should assure that defendants entering a plea understand the potential consequences— including that the court may consider any crimes that the defendant may have committed when it determines the defendant's character, pattern of behavior, and need to protect the public.

¶ 88. The term "dismissed outright" should be discontinued. It leads to misunderstanding. Instead, plea bargains should pin down whether a district attorney is agreeing not to prosecute a dismissed charge.

¶ 89. The defendant must understand and agree to a plea bargain. The effort to educate the defendant and secure his agreement should be documented in the plea questionnaire, and in a written plea agreement or on the record. Defense counsel already have extensive duties to fulfill when communicating with defendants —even, or especially, in the context of plea bargaining. *See* L. Michael Tobin, *Wisconsin Criminal Defense Manual* § 1.64, at Ch. 1 Pg. 43; §§ 6.18, 6.19, 6.20, at Ch. 6 Pg. 11; § 6.35, at Ch. 6 Pg. 18 (5th ed. 2011). The duty to assure the defendant's understanding and approval of any plea agreement should not be minimized.

¶ 90. We now move to Frey's plea.

¶ 91. At the hearing on the motion for resentencing, Frey's counsel declared, "Frey is not seeking to withdraw his pleas in this case and not seeking to shirk

responsibility for the crimes for which he was convicted. He is simply asking for a resentencing." Nevertheless, Frey appears to hint that ambiguity surrounding the term "dismissed outright" raises doubt whether his plea was knowing, intelligent, and voluntary.

¶ 92. "The United States Constitution sets forth the standard that a guilty or no contest plea must be *affirmatively* shown to be knowing, intelligent, and voluntary." *State v. Brown,* 293 Wis. 2d 594, ¶ 25.

¶ 93. The court of appeals in *Wesley* considered whether the term "dismissed outright" was ambiguous in the mind of the defendant when he entered his plea. *Wesley,* 321 Wis. 2d 151, ¶¶ 20–21. The *Wesley* court noted that, "as a matter of due process, if a guilty plea is induced by promises from the government, 'the essence of those promises must in some way be made known.' " *Id.,* ¶ 20 (quoting *Santobello v. New York,* 404 U.S. 257, 261–62 (1971)).

¶ 94. The court's duties established in Wis. Stat. § 971.08, and in such cases as *State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986), and *Brown,* 293 Wis. 2d 594, seek to ensure that a defendant's plea is knowing, intelligent, and voluntary.

¶ 95. In *Bangert,* this court held that a plea is not knowing, intelligent, and voluntary unless a defendant has a full understanding of the charges against him, *Bangert,* 131 Wis. 2d at 257, and the "nature of the constitutional rights he is waiving." *Id.* at 265–66. *Bangert* also requires that a trial judge ascertain a "defendant's education and general comprehension." *Id.* at 261. Drawing on precedent and Wis. Stat. § 971.08, *Bangert* outlined the duties of a judge at a plea hearing. *Id.* at 261–62, 270–71.

¶ 96. In *Brown,* this court restated and supplemented the *Bangert* outline. Three provisions relating to a judge's duties are especially relevant here:

> During the course of a plea hearing, the court must address the defendant personally and:
>
> . . . .
>
> (2) Ascertain whether any promises, *agreements,* or threats were made in connection with the defendant's anticipated plea, his appearance at the hearing, or any decision to forgo an attorney;
>
> . . . .
>
> (8) Establish personally that the defendant understands that the court is not bound by the terms of any plea agreement, including recommendations from the district attorney, in every case where there has been a plea agreement;
>
> (9) Notify the defendant of the direct consequences of his plea.

*Brown,* 293 Wis. 2d 594, ¶ 35 (emphasis added).

¶ 97. In this case, there is no explicit dispute whether Frey gave his plea knowingly, intelligently, and voluntarily. At the plea hearing, the trial judge, the district attorney, and defendant Frey participated in the following exchange:

> THE COURT: And is there any agreement with respect to the potential sentence?
>
> MR. DREXLER: Only, Judge, that we both agree that there be a presentence investigation conducted.
>
> THE COURT: All right. And are you bound by the presentence or each party free to argue?

MR. DREXLER: Each party is free to argue.

THE COURT: Mr. Frey, [has] that plea agreement been accurately stated by Mr. Drexler?

THE DEFENDANT: Not by Mr. Drexler[,] by my attorney.

THE COURT: By your attorney. And do you understand the plea agreement?

THE DEFENDANT: I didn't understand what you meant there with the PSI being open. I didn't understand that.

THE COURT: My question was: Was there an agreement with respect to the sentencing? And when Mr. Drexler suggests a presentence investigation[,] it is an evaluation by the Department of Corrections and probation officer to determine your background and social history and the like. And they do make a recommendation as to potential penalties.

On occasion district attorneys, since I was district attorney for awhile, you would—the agreement would call for the State not to exceed the recommendation of the PSI. And so I wanted to make sure if there was a PSI that wasn't the agreement. The agreement, in fact, is that each [is] going to ask for one. I don't have to order one. Each attorney will ask for one. And each attorney will be free to argue for whatever sentence that they deem appropriate [regardless] of what the PSI says. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: With that understanding is that how you want to proceed today?

THE DEFENDANT: Yes.

THE COURT: About . . . pleading pursuant to the plea agreement?

391

THE DEFENDANT: Yes, sir.

¶ 98. Another exchange also occurred:

THE COURT: And you further understand that upon a plea of guilty that I can impose any sentence which I deem appropriate up to the maximum potential penalties?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that I will not be bound by any sentencing recommendations of the State or any arguments of the State or any arguments of your attorney and that I can impose up to the maximum?

THE DEFENDANT: Yes, sir.

The court then explained the maximum sentence for each count in Frey's plea.

¶ 99. This exchange highlights the trial judge's attempt to ensure that Frey understood the significance of the pre-sentencing investigation (PSI) report; that the district attorney and defendant would be free to argue the findings of the PSI and whatever sentence each side thought was appropriate; that the judge was not bound by the plea agreement; and that Frey, understanding the stakes, wanted to proceed with the plea agreement. The judge's questions and Frey's answers indicate that Frey's plea was knowing, intelligent, and voluntary.

¶ 100. The circuit court must engage in an exchange with a defendant about what the plea agreement means, *Brown*, 293 Wis. 2d 594, ¶ 35, but the court is not bound by the plea agreement. *Hampton*, 274 Wis. 2d 379, ¶ 20; *State ex rel. White v. Gray*, 57 Wis. 2d 17, 24, 203 N.W.2d 638 (1973).

¶ 101. This exchange must be on the record. *Brown,* 293 Wis. 2d 594, ¶ 38 (concluding that the court, with the assistance of the district attorney, must engage a defendant at a plea colloquy to make "a complete record."). The plea agreement should be reduced to writing if at all possible. Here, the circuit court fulfilled its ultimate role in assuring that the defendant understood and approved the plea agreement.

■■■■

¶ 102. To sum up, we determine that a sentencing court may consider dismissed charges when it imposes a sentence. As a general rule, parties may not immunize certain offenses from consideration by the court. Rather, the court is expected to utilize the fullest amount of relevant information concerning a defendant's life and character in fashioning a sentence. It is the responsibility· of defense counsel to assure that the defendant understands and consents to the terms of any plea bargain and appreciates the authority and independence of the sentencing court. The circuit court must confirm the defendant's understanding. The State and defense counsel would be well advised to make sure they agree on the terms of any plea bargain by putting the agreement in writing and documenting efforts to keep the defendant informed of all important developments.

■■■■

¶ 103. We note that Frey is also asking for the opportunity to refute the accuracy and reliability of uncharged offenses. However, as the State points out, Frey's counsel took the opportunity at sentencing to refer to the dismissed sexual assault, and he disputed the reliability of the information. The circuit court did not *sua sponte* refer to the dismissed charges and thereby take counsel and defendant by surprise. A.B.'s

mother was given the opportunity to speak at the sentencing hearing, before Frey's counsel argued. Her statement, included the following comments:

> [I am] the mother of [A.B.] And I do not agree with the presentence report. And I believe this man deserves the maximum sentence. And he is a pedophile. And [it is a] known fact that statistics show that he cannot be rehabilitated. And given any chance this man will get back out and find another woman to prey upon and another child to assault. And my daughter was abruptly raped by this man and drugged and sexually assaulted many times [which] she could not prove because she had been drugged and she suffers greatly and [is] going through therapy.
>
> And this is something that is going to haunt her the rest of her life. And so I plead with you to give him the maximum amount. And also I'm not the mother of M.G. but for what she has been through and no one to speak for her, I also ask the same for her. This man does not deserve to see daylight. If you could lock him away forever he deserves a lifetime. And God reserves a special place in hell for people like you.

¶ 104. Frey's counsel spoke after these accusations. He not only had the opportunity to refute the charges, he began his remarks by attempting to discredit their accuracy. Frey's counsel stated:

> And the rape to which [A.B.'s mother] refers was not proven. And it was chosen by the prosecutor not to be prosecuted. And I might add that on one occasion the complaining witness in this case did not believe that rape could have happened or actually did happen. And so I would temper [A.B.'s mother]'s comments with those considerations.

¶ 105. At least two separate times later in the hearing, Frey's counsel referred to other charges from

Michigan and attempted to discourage the court's consideration of those previously dismissed or yet untried charges.

¶ 106. We note that a defendant has a right at sentencing to speak, Wis. Stat. § 972.14(2), and to refute allegedly inaccurate information that the court might otherwise consider during sentencing. *State v. Groth,* 2002 WI App 299, ¶¶ 22–23, 258 Wis. 2d 889, 655 N.W.2d 163. Defendants have a right to dispute even read-in charges. *Straszkowski,* 310 Wis. 2d 259, ¶ 5. Of course, defendants have an opportunity to dispute the validity of other dismissed, uncharged offenses. We conclude that that opportunity was not denied here.

¶ 107. We are also called upon in this case to review the extent to which a sentencing court can utilize dismissed counts when sentencing a defendant.

¶ 108. While Frey alleges that the court used the charges for an improper purpose, his argument is somewhat conclusory. In the sentencing transcript that Frey directs us to, the circuit court explicitly states that it was considering the dismissed charges to determine Frey's character. Both times when the court made detailed reference to A.B. the court stated: "when I consider the character of the defendant" and "although he wasn't convicted of that offense, once again, the court can consider that as part of his character." A thorough review of the entire transcript of the plea hearing indicates that the circuit court judge carefully listed all the factors that he was considering. The judge also carefully noted, when he referred to the dismissed charges, that he was using the dismissed charges to discern the defendant's character and pattern of behavior.

395

¶ 109. Frey admits that this court has already recognized that circuit courts may consider dismissed charges to determine a defendant's character. This case does not require us to determine the extent of other permissible uses for dismissed charges at sentencing. We simply reaffirm that circuit court judges may consider dismissed charges to determine a defendant's character when sentencing that defendant. The circuit court judge properly considered the dismissed charges in this case and thoroughly explained his use of the charges. Therefore, we uphold the judge's exercise of discretion in sentencing Frey.

## V. CONCLUSION

¶ 110. We conclude that a circuit court may consider dismissed charges in imposing sentence. Nothing in this case alters that longstanding rule. The circuit court here did not use the dismissed charges for an improper purpose. In addition, we conclude that Frey had adequate opportunity to refute the purported inaccuracies of the facts underlying the dismissed charges.

*By the Court.*—The decision of the court of appeals is affirmed.