PER CURIAM.
¶1 Nathan Birkholz appeals judgments imposing sentences after the revocation of his probation. Birkholz also appeals that part of an order denying his motion for postconviction relief. Birkholz argues he is entitled to resentencing because he was denied the effective assistance of counsel at the sentencing hearing following his probation revocation. We reject Birkholz's arguments and affirm the judgments and order.
BACKGROUND
¶2 In Douglas County Circuit Court case No. 2012CF143, the State charged Birkholz with twenty-four crimes arising from a burglary spree.[1] The State alleged that Birkholz and his accomplices searched for unlocked cars and garages and stole money, electronics, gas and other items of value they found. Pursuant to a plea agreement, Birkholz entered no-contest pleas to one count each of party to the crimes of burglary of a building or dwelling, theft of movable property, and misdemeanor theft. Six counts were dismissed and read in.[2] The remaining charges were dismissed outright. Consistent with the parties' joint sentence recommendation, the circuit court withheld sentence and imposed concurrent four-year probation terms on the burglary and felony theft counts, with a concurrent sentence of nine months in jail for the misdemeanor theft.
¶3 In Douglas County Circuit Court case No. 2015CF183, the State charged Birkholz with obstructing an officer; felony identity theft; and possession of drug paraphernalia. In exchange for his no-contest plea to felony identity theft, the State recommended that the other charges be dismissed and read in. Consistent with the parties' joint recommendation, the circuit court withheld sentence and placed Birkholz on three years' probation.
¶4 While on probation in both case Nos. 2012CF143 and 2015CF183, Birkholz was arrested in the parking lot of a Minnesota mall after a witness reported Birkholz for shoplifting. Law enforcement found a mixture of heroin and Fentanyl, along with heroin paraphernalia, in the car where Birkholz was sitting. Birkholz admitted the drugs and drug paraphernalia were his. Birkholz was placed on a probation hold and transported back to Douglas County. Police obtained Facebook records suggesting that Birkholz sold heroin, which he referred to as "kill," to multiple people, including to Neil Christianson on the day of Christianson's death. Police gave the Facebook records to Birkholz's probation agent, Layla Kaspar.
¶5 Investigators from the Superior Police Narcotics Bureau interviewed Birkholz at the Douglas County jail. After waiving his Miranda[3] rights, Birkholz did not deny that he sent the Facebook messages or that he sold heroin to at least five people, including Christianson. Birkholz, however, asserted he was not the only person "that served [Christianson] that day."
¶6 On the same day as the interview with investigators, Kaspar took a statement from Birkholz. Kaspar recommended revoking Birkholz's probation and prepared a revocation summary listing six specific probation violations. In the summary, Kaspar also recounted statements and admissions Birkholz made during her jail interview with him. Birkholz's probation was revoked, and the circuit court imposed consecutive and concurrent terms resulting in an aggregate sentence of nine years' initial confinement followed by five years' extended supervision. The court found Birkholz eligible for both the Challenge Incarceration Program (CIP) and the Substance Abuse Program (SAP), and told Birkholz "I have confidence that you'll be able to use those programs and get out early, but the ball's in your court."
¶7 Birkholz filed a motion for postconviction relief, alleging his trial counsel was ineffective in numerous ways at the sentencing hearing following his probation revocation. Birkholz's motion included a claim that counsel failed to request all of the sentence credit Birkholz was due. After a Machner[4] hearing, the circuit court granted Birkholz 363 days of sentence credit, but otherwise rejected his other ineffective assistance claims. These appeals follow.
DISCUSSION
¶8 This court's review of an ineffective assistance of counsel claim is a mixed question of fact and law. State v. Erickson , 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). The circuit court's findings of fact will not be disturbed unless they are clearly erroneous. Id. However, the ultimate determination whether the attorney's performance falls below the constitutional minimum is a question of law this court reviews independently. Id.
¶9 To substantiate a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient, and that counsel's errors were prejudicial. Strickland v. Washington , 466 U.S. 668, 687 (1984). A court need not address both components of this inquiry if the defendant does not make a sufficient showing on one. See id. at 697.
¶10 In order to establish deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. However, "every effort is made to avoid determinations of ineffectiveness based on hindsight ... and the burden is placed on the defendant to overcome a strong presumption that counsel acted reasonably within professional norms." State v. Johnson , 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990).
¶11 In reviewing counsel's performance, we judge the reasonableness of counsel's conduct based on the facts of the particular case as they existed at the time of the conduct and determine whether, in light of all the circumstances, the omissions fell outside the wide range of professionally competent representation. Strickland , 466 U.S. at 690. Because "[j]udicial scrutiny of counsel's performance must be highly deferential ... the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689.
¶12 A defendant proves prejudice by demonstrating there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. However, "[a] defendant need not prove the outcome would 'more likely than not' be different in order to establish prejudice in ineffective assistance cases." State v. Sholar , 2018 WI 53, ¶44, 381 Wis. 2d 560, 912 N.W.2d 89 (citing Strickland , 466 U.S. at 693 ).
¶13 Birkholz first argues that his trial counsel was ineffective by failing to object to the circuit court's consideration of statements Birkholz was compelled to give to his probation agent. The State does not dispute that the challenged statements were compelled and concedes that "[c]ompelled, incriminating statements are an improper factor in determining a defendant's sentence because their use would violate the defendant's Fifth Amendment right against self-incrimination." State v. Alexander , 2015 WI 6, ¶30, 360 Wis. 2d 292, 858 N.W.2d 662. The question, therefore, is whether the court actually relied on the defendant's compelled statements. Id.
¶14 Here, the sentencing court received a copy of the revocation summary which recounted Birkholz's admissions that he was dealing heroin to support his own habit, he had missed drug treatment, he absconded, and he sold heroin to Christianson. Birkholz also told Kaspar that he is the only one in town who knows where to get "the strong stuff," adding that he knew Christianson died, "but didn't know it was a result of what he sold him."
¶15 In the revocation summary, Kaspar noted "the text messages that agent saw from the police report showed [Birkholz] was dealing quite a bit." Kaspar also noted her concern that Birkholz "even mentioned that he is the only one in the area that knew where to get and was selling a very strong type of heroin," adding that "[i]n the police reports, the offender refers to the heroin he was selling as 'killer' ... which he admits, he sold to Neil Christianson who died as a result of a heroin overdose."
¶16 Birkholz argues that when pronouncing the sentence, the circuit court mentioned the compelled statements when it said: "Birkholz has admitted to being a heroin dealer. We're talking about this terrible drug heroin and this addiction. He's one of the people selling it." Birkholz thus argues that the court relied on the compelled statements because it "explicitly mentioned that Birkholz admitted to selling heroin." Birkholz suggests that the court had no means other than the revocation summary to learn that he was selling heroin.
¶17 Contrary to Birkholz's argument, information that he had been dealing in heroin had been provided by the defense at sentencing. Defense counsel argued that Birkholz's criminal conduct was driven by his addiction to heroin, stating:
It does appear from what I've read and heard from Mr. Birkholz, he did start out fairly well and then things started to snowball and one thing led to the next, led to the next, and ultimately we have a young man who is not only using heroin but selling heroin.
....
It sounds like the forced sobriety of the jail has done him quite a bit of good. I think he recognizes that yes, he had all these opportunities and yes, he squandered them and that leads to consequences, but failing at one thing doesn't mean he fails at everything just because he wasn't equipped with the proper discipline or motivation to take part in the outpatient treatments or the out-of-custody treatments that probation provided doesn't mean he's doomed to a life of heroin addiction [.]
....
There's certainly a substance abuse problem. There's no question he was using a large quantity of heroin, and there was distribution of heroin, and I believe there's even fentanyl-laced heroin involved. That's a pretty serious set of drug allegations and admissions.
Defense counsel then recommended three years of initial confinement with another three or four years of extended supervision, suggesting that the three years of initial confinement would be sufficient for him to complete the CIP or SAP.
¶18 At the Machner hearing, defense counsel explained that he acknowledged Birkholz was using and selling heroin because "the focus of our sentencing argument was, essentially, Mr. Birkholz is a very hardcore heroin addict and the hope was to mitigate his sentence by primarily relying on that need for treatment and say, you know, we can't lock him up because he's an addict." In concluding that counsel had not performed deficiently in this regard, the circuit court stated that this information "benefits the defendant and gives the court ... context[.]" The court added that there "is a difference, and the court treats it differently, when there's somebody who is an addict who is dealing drugs to support their habit, versus otherwise," and it "was more favorable to the defendant than otherwise, because I could have done some other things, like finding him ineligible for programming, potentially, things like that." "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland , 466 U.S. at 690.
¶19 Even were we to assume counsel was somehow deficient by failing to object to the revocation summary at sentencing, Birkholz fails to show how he was prejudiced by his attorney failing to object to information the circuit court found mitigating. Moreover, the probation agent gleaned information from police reports about Birkholz's involvement in other criminal activity, and the agent included it in the revocation summary. Thus, there were independent sources other than Birkholz's compelled statements for Kaspar, and by extension the sentencing court, to learn that Birkholz was dealing heroin. This challenge to the effectiveness of Birkholz's counsel therefore fails.
¶20 Birkholz also claims his counsel was ineffective by failing to correct a misstatement in the revocation summary. Specifically, the summary recounted that Birkholz was "revoked off his Ashland County case" and that another probation agent had "revoked Case 12CM165." Because case No. 2012CM165 is a Douglas County case, Birkholz contends this misstatement made it appear that Birkholz had two previous revocations rather than one. Birkholz, however, fails to establish that the circuit court believed there were two revocations. In fact, at the Machner hearing, the court noted it was speculative to assume that the court would "jump to the conclusion that there was more than one revocation because [the court] just didn't read it in context being that way." Further, the court remarked, "[S]o what? What's the prejudice? There's a typo from Ashland to Douglas." Ultimately, Birkholz fails to establish how he was prejudiced by this claimed deficiency on the part of his counsel.
¶21 Next, Birkholz argues counsel was ineffective by failing to inform the sentencing court that a co-defendant received a lesser sentence following the revocation of his probation. Disparity among co-defendants' sentences is not improper if the individual sentences are based upon individual culpability and the need for rehabilitation. State v. Toliver , 187 Wis. 2d 346, 362, 523 N.W.2d 113 (Ct. App. 1994). Moreover, leniency in one case does not transform a reasonable punishment in another case into a cruel one. State v. Perez , 170 Wis. 2d 130, 144, 487 N.W.2d 630 (Ct. App. 1992). Further, the facts leading to the revocation of their respective probations further differentiate Birkholz from his co-defendant, making their positions even less comparable. Birkholz, therefore, has failed to establish that counsel was deficient in this regard. Because the circuit court acknowledged at the Machner hearing that this information would not have changed the sentence, Birkholz also fails to establish prejudice.
¶22 Birkholz additionally asserts his counsel was ineffective by failing to inform the sentencing court that the Department of Corrections ("DOC") would not place Birkholz into CIP or SAP until he was within three years of his release date and, thus, a longer term of imprisonment was likely to delay treatment. Birkholz, however, failed to show that the DOC had specific rules governing when exactly Birkholz would be able to participate in these programs, notwithstanding his eligibility for the programs. Even assuming such rules existed, Birkholz fails to explain why providing this information to the court would have altered his sentence. In rejecting this ineffective assistance of counsel claim, the court stated, "[Q]uite frankly, I don't consider what the DOC may or may not do" when imposing sentence. The court added that it is impossible to predict when an inmate will start programming "because it's a fluid situation." Birkholz therefore fails to show how he was prejudiced by this claimed deficiency of his counsel.
¶23 Finally, Birkholz argues his counsel was ineffective by failing to object to the circuit court reading victim impact statements for some of the charges that were dismissed outright. A court, however, may consider charges that have been dismissed outright in imposing a sentence. State v. Frey , 2012 WI 99, ¶40, 343 Wis. 2d 358, 817 N.W.2d 436. The Frey court acknowledged that "to discharge its obligation to discern a defendant's character, a sentencing court may consider uncharged and unproven offenses, whether or not the defendant consents to having the charge read in." Id. , ¶47 (internal quotations and citations omitted). In fact, "the court may consider not only uncharged and unproven offenses but also facts related to offenses for which the defendant has been acquitted." Id. We are persuaded that the sentencing court's obligation to discern Birkholz's character reasonably included how his conduct affected the victims in even those charges that were dismissed outright. Because the sentencing court properly considered the victim impact statements, counsel was not deficient by failing to object.
¶24 Because Birkholz has failed to establish that any of his counsel's claimed errors-either alone or in the aggregate-constitute ineffective assistance of counsel, the circuit court properly denied his claims.
By the Court. -Judgments and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

This case was consolidated with Douglas County Circuit Court case No. 2012CM165 for plea and sentencing. In that case, Birkholz pleaded no contest to one count of misdemeanor battery and received two years' probation, to run concurrently to the probation imposed in case No. 2012CF143. Case No. 2012CM165, however, is not a subject of these appeals.

The dismissed and read-in charges consisted of two counts of misdemeanor theft, three counts of burglary of a building or a dwelling, and one count of burglary that included arming himself with a dangerous weapon while in the burglarized enclosure, all as party to a crime.

Miranda v. Arizona , 384 U.S. 436 (1966).

State v. Machner , 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).