# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP2760-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Daniel W. Johns, Jr., Attorney at Law: |
| | Office of Lawyer Regulation, |
| |        Complainant-Appellant, |
| |    v. |
| | Daniel W. Johns, Jr., |
| |        Respondent-Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST JOHNS

| | |
|---|---|
| OPINION FILED: | June 6, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 23, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | ABRAHAMSON, C.J., dissents. (Opinion filed.) |
|   NOT PARTICIPATING: | BRADLEY, J., did not participate. |

ATTORNEYS:

For the Office of Lawyer Regulation there were briefs by *Thomas J. Basting Sr.*, Madison, and oral argument by *Thomas J. Basting Sr.*

For the respondent-respondent, there was a brief by *Dean R. Dietrich*, and *Ruder Ware L.L.S.C.*, Wausau, and oral argument by *Dean R. Dietrich*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP2760-D

STATE OF WISCONSIN : IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Daniel W. Johns, Jr., Attorney at Law:**

**Office of Lawyer Regulation,**

**FILED**

Complainant-Appellant,

**JUN 6, 2014**

v.

**Daniel W. Johns, Jr.,**

Diane M. Fremgen
Clerk of Supreme Court

Respondent-Respondent.

ATTORNEY disciplinary proceeding. *Complaint dismissed.*

¶1 PER CURIAM. In this disciplinary proceeding, the referee concluded that the Office of Lawyer Regulation (OLR) had proven violations on one of two counts contained in the complaint filed by the OLR. Based on that violation, the referee recommended that Attorney Daniel W. Johns, Jr., be either privately or publicly reprimanded. The OLR appeals from the referee's report and recommendation, arguing that the court should determine that Attorney Johns committed both counts of misconduct and should be suspended for 60 days.

¶2 After independently reviewing the record, we accept the facts as found by the referee. We agree with the referee's conclusion that Attorney Johns' conduct resulting in a 2004 felony conviction does not reflect adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects so as to violate SCR 20:8.4(b).[1] We disagree with the referee's conclusion that Attorney Johns violated SCR 21.15(5),[2] as enforced via SCR 20:8.4(f),[3] by failing to notify the clerk of the supreme court and the OLR, in writing, of his conviction. We conclude that Attorney Johns' violation of SCR 21.15(5) was too technical to justify the imposition of legal consequences. Accordingly, the complaint is dismissed.

---

[1] SCR 20:8.4(b) states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

[2] SCR 21.15(5) provides:

An attorney found guilty or convicted of any crime on or after July 1, 2002, shall notify in writing the office of lawyer regulation and the clerk of the [s]upreme [c]ourt within 5 days after the finding or conviction, whichever first occurs. The notice shall include the identity of the attorney, the date of finding or conviction, the offenses, and the jurisdiction. An attorney's failure to notify the office of lawyer regulation and clerk of the supreme court of being found guilty or his or her conviction is misconduct.

[3] SCR 20:8.4(f) states that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

¶3 Attorney Johns was admitted to the practice of law in Wisconsin in 1999. He has no disciplinary history.

¶4 On November 30, 2011, the OLR filed a two-count complaint against Attorney Johns. This court appointed the Honorable James R. Erickson as referee. The referee held an evidentiary hearing on June 28, 2012. Both parties submitted post-hearing briefs.

¶5 The referee submitted a report containing his findings of fact, conclusions of law, and a recommendation for discipline. The findings of fact incorporated a stipulation between the parties and a series of exhibits attached to that stipulation. The findings of fact and conclusions of law are summarized below.

¶6 When reviewing the referee's report, we will affirm the referee's findings of fact unless they are found to be clearly erroneous, but we will review the referee's conclusions of law on a de novo basis. See In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125.

¶7 Shortly before 1:00 a.m. on December 28, 2002, when he was 29 years old, Attorney Johns was the driver in a deadly one-vehicle drunk driving accident. Earlier that evening, Attorney Johns had met his father, stepmother, brother, and other family members at a restaurant in northern Wisconsin to celebrate the holidays. After dinner, Attorney Johns and his brother stayed at the restaurant bar with friends. When the restaurant closed, Attorney Johns and his brother left in

3

Attorney Johns' pickup truck, with Attorney Johns driving. According to the police report, it is unlikely that either Attorney Johns or his brother were wearing seatbelts. Attorney Johns drove too fast as he turned from U.S. Highway 51 onto a county highway. Attorney Johns lost control of the truck, causing it to skid off the roadway and strike a tree. Attorney Johns' brother was partially ejected from the truck; his head hit the tree, causing fatal injuries. Medical personnel arrived at the scene and transported Attorney Johns' brother to the hospital, where he was declared dead.

¶8 Attorney Johns was also transported to the hospital. He was in great distress over his brother's death. He had a cut above his eye, but did not permit medical staff to treat his injury. He also had a strong odor of intoxicants and slurred speech.

¶9 Police concluded that, given Attorney Johns' head injury and emotional state, standard field sobriety exercises would be inaccurate and inappropriate. Attorney Johns refused to submit to a blood draw. A police officer directed hospital personnel to draw a sample of Attorney Johns' blood. Attorney Johns had a blood alcohol content of .257%.

¶10 Attorney Johns was arrested and, after being read his warnings under Miranda v. Arizona, 384 U.S. 436 (1966), declined to answer any questions and invoked his right to counsel.

¶11 On June 10, 2004, Attorney Johns pled guilty to and was convicted of one count of homicide by use of a vehicle with

4

a prohibited alcohol concentration. Attorney Johns has no other criminal history.

¶12 Before the circuit court accepted Attorney Johns' plea, there was some confusion amongst the parties and the court as to whether a conviction on this count would result in an automatic revocation of Attorney Johns' law license. Attorney Johns' lawyer stated that it was his understanding that a felony conviction would not result in an automatic revocation of Attorney Johns' law license, but rather that the OLR would need to examine the nature of the crime and its relation to Attorney Johns' fitness to practice law. The circuit court expressed uncertainty on this point. The circuit court ordered a recess and directed the prosecutor, defense counsel, and Attorney Johns to telephone the OLR and resolve the issue. They did so in an off-the-record telephone conversation.

¶13 When the parties returned on the record, Attorney Johns' lawyer stated as follows:

> Judge, we were successful in getting hold of the Office of Lawyer Regulation. We talked to the deputy director, John O'Connell is his name, and he advised us that my understanding of what would happen here with regard to OLR action was correct and I actually advised Mr. Johns correctly regarding all of that.
>
> To summarize, in the State of Wisconsin there is not any provision that calls for an automatic revocation or suspension of license based solely upon the felony conviction. Mr. O'Connell referenced the standards that I referenced previously on the record, and that if there were any action taken, it would bear upon Mr. Johns' fitness to practice law and would not relate to the nature, the classification of the

5

conviction but rather the facts and circumstances of the conduct.

¶14 With this explanation on the record, the circuit court accepted Attorney Johns' plea and entered a judgment of conviction. The circuit court sentenced Attorney Johns to 120 days in jail, with five years of probation.

¶15 Attorney Johns served his jail time and was released on probation. At the halfway point of Attorney Johns' probation, his probation agent recommended that he petition for early termination of probation. The circuit court supported an early termination, noting in a letter to the district attorney Attorney Johns' "extraordinary record of community service" and his "180-degree turnabout" from the behavior that led to the deadly drunk driving accident. Attorney Johns was released from probation two-and-a-half years early, on May 14, 2007.

¶16 Attorney Johns began practicing law again. He is currently a full-time solo practitioner.

¶17 In December 2010 a third party——revealed at oral argument to be the Milwaukee Journal Sentinel——informed the OLR of Attorney Johns' 2004 conviction. This proceeding followed.

¶18 The OLR brought two counts against Attorney Johns. Count One alleged a violation of SCR 20:8.4(b) due to the conduct resulting in Attorney Johns' 2004 conviction. Count Two alleged a violation of SCR 21.15(5), as enforced via SCR 20:8.4(f), because Attorney Johns failed to notify the clerk of the supreme court and the OLR, in writing, of his felony conviction in 2004. The OLR sought a 60-day suspension.

6

¶19 In his answer to the OLR complaint, Attorney Johns denied that his conduct resulting in his 2004 conviction reflected adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects so as to violate SCR 20:8.4(b). Attorney Johns also denied that he had committed misconduct under SCR 21.15(5); he admitted that he did not provide written notice of the felony conviction, but explained that he and his lawyer spoke with the OLR on the date of the conviction regarding the possible impact of the conviction on his law license.

¶20 On September 21, 2012, and after a disciplinary hearing, the referee filed a report. The referee concluded that Attorney Johns did not violate SCR 20:8.4(b). The referee wrote that the "commission of a criminal act by a Wisconsin licensed lawyer does not, per se, constitute professional misconduct." Such a bright line approach, the referee wrote, "would preclude each case from being carefully considered based on the individual facts and circumstances surrounding each criminal offense and how those facts reflected upon the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The referee concluded that the OLR had not proven that Attorney Johns' crime reflected adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects. The referee wrote:

> The evidence in this case clearly shows that the crime committed by [Attorney Johns] was a once in a lifetime aberration in his otherwise fine behavior. Except for this one specific and tragic event,

[Attorney Johns] has led an exemplary personal and professional life. There is no evidence that points to even a hint of any other kind of personal or professional misconduct. There have been no prior reprimands. There is no evidence of any fraud, deceit, dishonesty, cheating, client abuse, or malpractice in any of his behavior. There is no other criminal record.

[Attorney Johns] is a highly regarded and contributing member of his community and of the legal profession. He is a credit to the legal profession. In my opinion, a sanction of law license suspension is unwarranted. While it is true that the very long delay in bringing the disciplinary proceedings [has] given [Attorney Johns] years to accumulate his present fine standing, the evidence is allowed and is very impressive.

¶21 Thus, the referee recommended that the court dismiss Count One's allegation of a violation under SCR 20:8.4(b).

¶22 As to Count Two, the referee concluded that Attorney Johns violated SCR 21.15(5) by failing to send written notice of his 2004 felony conviction to the OLR and to the supreme court clerk. The referee wrote that although Attorney Johns' and his lawyer's phone call with the OLR on the date of the plea hearing in the criminal case might have provided actual notice to the OLR, it was insufficient to comply with SCR 21.15(5), which requires written notice to both the OLR and the supreme court clerk.

¶23 As for discipline, the referee recommended a private reprimand, "unless the Court should conclude that a public reprimand is more appropriate in order to deter other Wisconsin attorneys from also violating [SCR 21.15(5)]."

8

¶24 The OLR appeals the referee's report and recommendation. The OLR makes five main points on appeal.

¶25 First, the OLR argues that the referee's recommendation was inconsistent with Wisconsin precedent on attorney discipline for homicide while driving drunk. In support of this proposition, the OLR cites In re Disciplinary Proceedings Against Stearn, 2004 WI 73, 272 Wis. 2d 141, 682 N.W.2d 326, in which the court granted Attorney Stearn's petition for consensual license revocation under SCR 22.19 after he was convicted of homicide by intoxicated use of a vehicle and causing great bodily harm by intoxicated use of a vehicle. Attorney Stearn received a 12-year prison sentence. Attorney Stearn conceded that he could not successfully defend against the OLR misconduct allegations, which included the assertion that his convictions established conduct that reflected adversely on his honesty, trustworthiness or fitness as a lawyer in other respects, contrary to SCR 20:8.4(b).

¶26 Second, the OLR argues that this court has found a nexus between a criminal act and a lawyer's fitness in cases involving far less serious criminal convictions than that present here. See Inglimo, 305 Wis. 2d 71, ¶¶49-55 (holding that attorney's marijuana usage with and delivery to clients reflected adversely on his fitness as a lawyer).

¶27 Third, the OLR notes that in other jurisdictions, attorneys who have been convicted of vehicular homicide have received suspensions ranging from 18 months to disbarment. See In re Janklow, 709 N.W.2d 28 (S.D. 2006) (26-month suspension

9

for a manslaughter conviction after lawyer, who was not under the influence of drugs or alcohol, ran a stop sign and collided with another vehicle); State ex rel. Oklahoma Bar Ass'n v. Wyatt, 32 P.3d 858 (Okla. 2001) (disbarment for a manslaughter conviction resulting from drunk driving accident); Office of Disciplinary Counsel v. Michaels, 527 N.E.2d 299 (Ohio 1988) (18-month suspension following deadly drunk driving accident); In re Morris, 397 P.2d 475 (N.M. 1964) (indefinite suspension for involuntary manslaughter conviction resulting from drunk driving accident; lawyer could apply for termination of suspension after the later of one year following disciplinary order, or upon completion of sentence, or upon being restored to all civil rights); In re Hoare, 155 F.3d 937 (8th Cir. 1998) (disbarment for an aggravated reckless homicide conviction resulting from drunk driving accident).

¶28 Fourth, the OLR argues that on the facts of this case, a 60-day suspension is appropriate. It points out that in In re Disciplinary Proceedings Against Brandt, 2012 WI 8, 338 Wis. 2d 524, 808 N.W.2d 687, this court imposed a four-month suspension on Attorney Brandt, consistent with the parties' stipulation, after he received a felony conviction in Minnesota of first-degree driving while intoxicated within ten years of the first of three or more qualified prior impaired driving incidents. The OLR also points out that, according to the Washington Supreme Court, a suspension of some length of time "is the appropriate sanction for every vehicular homicide." In re Disciplinary Proceedings Against Curran, 801 P.2d 962, 974

10

(Wash. 1990). The OLR further claims that this court has imposed significant suspensions for crimes far less serious than homicide by use of a vehicle with a prohibited alcohol concentration. See, e.g., In re Disciplinary Proceedings Against Mross, 2003 WI 4, 259 Wis. 2d 8, 657 N.W.2d 342 (90-day suspension for lawyer's unlawful sale of cigarettes to jail inmates while visiting his clients in jail).

¶29 Fifth, and finally, the OLR argues that the referee erred by admitting 21 letters from juveniles in the Lincoln Hills School, a juvenile correctional institution in Wisconsin. As a form of community service, Attorney Johns gave talks to classes at the Lincoln Hills School concerning his personal history. In the letters at issue, the students expressed appreciation for Attorney Johns' time and message. The OLR cites In re Disciplinary Proceedings Against Eisenberg, 117 Wis. 2d 332, 344 N.W.2d 169 (1984), in which this court held that the referee erred by receiving into evidence 67 letters of character reference by attorneys and others who did not testify at the disciplinary hearing and whose statements as to Attorney Eisenberg's character were not made under oath. Id. at 338-39.

¶30 We begin by discussing the alleged failure-to-notify violation under SCR 21.15(5). The referee concluded that Attorney Johns committed a failure-to-notify violation under SCR 21.15(5). Although Attorney Johns did actually inform the OLR of his conviction through his lawyer's off-the-record telephone conversation with an OLR official during his plea

11

hearing, SCR 21.15(5) requires notification "in writing" to the OLR and the clerk of the supreme court. Attorney Johns did not satisfy this "in writing" requirement.

¶31 This was a violation of the most technical variety. It is undisputed that, due to the telephone conversation between Attorney Johns' lawyer and the OLR's deputy director on the day of Attorney Johns' plea hearing, the OLR had actual knowledge of the conviction from the day it was entered. Under the unique facts of this case, a completely literal enforcement of SCR 21.15(5) benefits no one and settles nothing. We therefore dismiss this count.

¶32 We move now to the issue of whether Attorney Johns violated SCR 20:8.4(b) through the misconduct leading to his conviction for homicide by use of a vehicle with a prohibited alcohol concentration. We agree with the referee that on the facts of this case, the answer is no.

¶33 In answering this question, it is helpful to bear in mind the purpose of disciplinary actions. The purpose of the disciplinary system is not punishment or atonement, but to determine whether misconduct as defined by our rules has occurred and to what extent that misconduct indicates unfitness to practice law. See In re Disciplinary Proceedings Against Crandall, 2008 WI 112, ¶23, 314 Wis. 2d 33, 754 N.W.2d 501. No one disputes that the facts of this case are tragic: Attorney Johns drove drunk and killed his brother——a senseless loss of life. This court will resist the impulse, however, to

assume that the unfortunate death of Attorney Johns' brother necessarily reflects upon Attorney Johns' fitness as a lawyer.

¶34 Supreme Court Rule 20:8.4(b) requires us to answer whether Attorney Johns' criminal act "reflects adversely" on his: (1) honesty, (2) trustworthiness, or (3) "fitness as a lawyer in other respects." We hold that Attorney Johns' criminal act does not reflect adversely on the first two factors, his honesty or trustworthiness. This was Attorney Johns' first drunk-driving related conviction. He has no other criminal record. He has been truthful about his actions. He has never disclaimed responsibility for his wrongdoing. He did not flee the scene of the accident; the record shows that a responding officer observed him trying to administer mouth-to-mouth resuscitation to his fatally wounded brother. He gained nothing from his criminal action. Thus, the record does not show that Attorney Johns' terrible decision to drive drunk on the night in question belies a deep-seated tendency toward dishonest or untrustworthy actions.

¶35 The question becomes, then, whether Attorney Johns' criminal act reflects adversely on his "fitness as a lawyer in other respects"; i.e., whether the act bears on a character trait which, like honesty and trustworthiness, is essential to the practice of law.

¶36 The ABA Comment [2] to SCR 20:8.4 provides some guidance as to what crimes reflect adversely on fitness as a lawyer. It states:

13

Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate [a] lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.

¶37 We also note that in interpreting subsection (6) of SCR 22.36 ("Reinstatement; removal of conditions"), we have interpreted the term "fit" with the phrase "to practice law" to "imply a state of preparedness to render competent legal services; that is, to be prepared to provide the measure of expertise to ensure the attorney may be safely recommended to the community as a person to be consulted by and to represent others in legal matters." In re Medical Incapacity Proceedings Against Schlieve, 2010 WI 22, ¶24, 323 Wis. 2d 654, 780 N.W.2d 516. We believe these same concepts——preparedness, competence, expertise, credibility——are useful here in determining whether Attorney Johns' criminal act reflects adversely on his "fitness as a lawyer in other respects." SCR 20:8.4(b).

¶38 We have identified certain types of criminality as particularly relevant to a person's fitness as a lawyer. For example, we have held that a pattern of convictions "evinces a serious lack of respect for the law and as such relate[s] to [a lawyer's] 'fitness as a lawyer in other respects.' Attorneys are officers of the court and should be leaders in their communities and should set a good example for others." In re

14

Disciplinary Proceedings Against Brandt, 2009 WI 43, ¶42, 317 Wis. 2d 266, 766 N.W.2d 194 (discussing a lawyer's multiple OWI convictions). We also have held that certain criminal conduct is so revealing of character defects, and so undermines public confidence in the legal profession, that it necessarily reflects adversely on an attorney's fitness as a lawyer. See Inglimo, 305 Wis. 2d 71, ¶¶49-55 (lawyer's marijuana usage with clients showed the clients that their lawyer had "a disregard for the law" that "reflect[ed] adversely not only on the lawyer's fitness, but on the profession as a whole"); see also In re Disciplinary Proceedings Against Penn, 201 Wis. 2d 405, 406, 548 N.W.2d 526 (1996) (district attorney's illegal drug usage with individuals subject to prosecution by his office damaged the "public trust in the legal system to which the people of his county elected him").

¶39 Employing the above principles here, we conclude that Attorney Johns' criminal act does not reflect adversely on his "fitness as a lawyer in other respects." SCR 20:8.4(b). Attorney Johns' conviction is not part of a larger pattern of criminal behavior that suggests indifference toward the law. He has no other criminal history. The record does not suggest that Attorney Johns' conviction has adversely affected his professional relationships with judges, fellow lawyers, clients, or other members of the legal system. Attorney Johns' conviction does not call into question his ability to competently and vigorously represent clients; we have no reason to doubt the referee's finding that Attorney Johns is "a highly

15

regarded and contributing member of his community and of the legal profession." Nor, we believe, should Attorney Johns' criminal act diminish public confidence in the legal profession. This case is far different from those in which an attorney abused his or her professional status as a lawyer in committing a criminal act. Attorney Johns violated no practice norms. He harmed no clients. He did not benefit from his misconduct. He has been arrested, convicted, sentenced, jailed, and supervised on probation. He will forever have a heavy conscience regarding this incident.

¶40 Considering all of the above, we do not believe that Attorney Johns' isolated criminal act, even with its tragic consequences, denotes a deficiency in honesty, trustworthiness, or other character traits that are essential to the practice of law.

¶41 As noted earlier, the OLR cites a variety of out-of-state cases in an attempt to convince the court to find a violation of SCR 20:8.4(b). The OLR waited until its reply brief to first identify the case that it maintains is most relevant to this case: In re Hoare, 155 F.3d 937 (8th Cir. 1998). The facts of Hoare are as follows. One early morning, Attorney Hoare, drunk, drove his car the wrong way onto an interstate highway in Illinois and collided with another vehicle, causing that driver's death. Id. at 938. Attorney Hoare was ultimately convicted of aggravated reckless homicide. Id. at 939. A series of professional disciplinary actions against Attorney Hoare followed. In an unpublished

16

decision that is not available on Westlaw or Lexis and has not been provided to us by the OLR, the Missouri Supreme Court issued an order disbarring Attorney Hoare from the practice of law in Missouri.  Id. at 939, citing In re Michael Hoare, No. 78870 (Mo. S. Ct. Jul. 16, 1996).  In an unpublished order that is also not available on Westlaw or Lexis and has not been provided to us by the OLR, the United States District Court for the Eastern District of Missouri imposed the same discipline as that imposed by the Missouri Supreme Court:  disbarment.  Id. at 940, citing In the Matter of Michael J. Hoare, No. 96-MC-187 (E.D. Mo. Mar. 11, 1997) (en banc).  The Eighth Circuit affirmed, noting that federal courts are "obliged to accord a high level of deference to state court disbarment proceedings," and that   "we cannot say that the district court abused its discretion in concluding that the reciprocal discipline of disbarment would not result in grave injustice."  Id. at 940-42.

¶42  We do not find Hoare particularly enlightening.  The Eighth Circuit in Hoare was operating under a constrained standard of review of a 1996 Missouri Supreme Court order that is unavailable to us and that relied upon a Missouri Supreme Court Rule that the OLR neither quotes nor substantively discusses.  In the instant case, we enjoy a de novo standard of review over the legal issues presented, and we have the benefit of a fully developed record.  For the reasons set forth above, we hold that on the particular facts of record, Attorney Johns' criminal act does not reflect adversely on his honesty,

17

trustworthiness, or fitness as a lawyer in other respects, despite the act's tragic consequences.

¶43 We move now to the third issue raised in the parties' briefs: whether the referee erred in admitting 21 letters from juveniles in the Lincoln Hills School (a juvenile correctional institution) expressing appreciation to Attorney Johns for a talk he gave them about his life experiences. Here is a representative example of one of the letters:

Dear Mr. Johns,

I would like to thank you for taking the time out of your day to come and speak to us. I could see myself in you. I did get some things out of your story. One of them . . . is don't drink, and another is don't drink and drive under [any] circumstances. I also got that change is possible and it do[es] exist. I admire and respect you. Thank you again.

¶44 In its brief-in-chief, the OLR argued that these letters constituted inadmissible hearsay. Attorney Johns disputed this assertion in his response brief. Attorney Johns further argued that, even if these letters should not have been admitted, their admission into evidence was harmless error because the record contains abundant other uncontested evidence of his good character.

¶45 The OLR ignores the topic in its reply brief. Neither party mentioned the issue at oral argument. We take this lack of reply by the OLR as a concession that the letters were admissible. See State ex rel. Blank v. Gramling, 219 Wis. 196, 199, 262 N.W. 614 (1935).

18

¶46 For the reasons stated above, we accept the referee's conclusion that Attorney Johns' conduct resulting in his 2004 conviction does not reflect adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects so as to violate SCR 20:8.4(b). We depart from the referee's conclusion that Attorney Johns' committed a failure-to-report violation under SCR 21.15(5); we conclude that Attorney Johns' violation of SCR 21.15(5) was too technical to justify the imposition of legal consequences. Accordingly, we dismiss the complaint.

¶47 IT IS ORDERED that the disciplinary complaint filed against Daniel W. Johns, Jr., is dismissed. No costs.

¶48 ANN WALSH BRADLEY, J., did not participate.

¶49 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting).* The OLR charged Attorney Johns with two violations of the Rules of Professional Conduct for Attorneys. I conclude that the two violations were proved, but I would not impose any discipline.

¶50 Attorney Johns agrees (as he must) that he violated the Rules by failing to notify the clerk of the supreme court and OLR in writing of his felony conviction. Attorney Johns disputes whether his conviction of vehicular homicide violated the Rules.

¶51 The referee agreed with Attorney Johns that he violated only one provision of the Rules of Professional Conduct for Attorneys, namely failing to notify the clerk of the supreme court and the OLR in writing of his felony conviction.[1]

¶52 The per curiam opinion concludes that Attorney Johns' conduct does not violate the Rules in either respect.

¶53 I disagree with the court's disposition of the present case and address the two charges in parts A and B of this dissent.

¶54 Because this case, along with two other pending cases and an open rules petition hearing and open rules petition conference, raise important concerns about the present lawyer regulatory system, I write stating the requests previously made for the court to initiate a study of the lawyer regulatory

---

[1] The referee concluded that Johns did not violate the Rules by his felony conviction of vehicular homicide of his brother because the conviction does not reflect on Attorney Johns' honesty, trustworthiness, or fitness as a lawyer.

1

system. The lawyer regulatory system now in effect was instituted about 15 years ago. It is time to examine it to determine whether revisions are needed. The director of the Office of Lawyer Regulation agrees. I discuss this issue in Part C of this dissent.

A

¶55 With regard to the notification violation, Attorney Johns did not notify the OLR and the clerk of the Supreme Court of his felony conviction in writing, as SCR 21.15(5) requires. He did speak with a named employee at OLR. OLR does not deny that this oral communication occurred. Attorney Johns does not claim he spoke with or wrote the clerk of the Supreme Court about his conviction.

¶56 The rule is straightforward: It requires a written notice to two offices. A writing constitutes official notice to the OLR and the court; writing is key to the reporting requirement and attorney discipline. A written communication avoids evidentiary proceedings to determine who said what to whom and when.

¶57 Furthermore, the rule requires communication to both the OLR and the clerk's office. Attorney Johns failed to notify the clerk's office in any way. No one asserts he complied with notification to the clerk's office.

¶58 The per curiam opinion characterizes the present case as a technical violation. I do not know what a "technical violation" means. Attorney Johns' notification to OLR was not

2

in writing and no notification was made to the clerk of the supreme court.

¶59 The court's conclusion that Attorney Johns did not violate SCR 21.15(5) is clearly contrary to the stipulated facts and the plain, unambiguous text of the Rules.

¶60 The court has discretion whether to impose discipline. SCR 21.16. In light of the circumstances of the case, including Attorney Johns' stellar record for the last decade, I would not impose any discipline for this violation.

B

¶61 The felony conviction presents a more difficult issue. The commission of a criminal act by a Wisconsin-licensed lawyer does not in and of itself automatically constitute professional misconduct. The facts and circumstances of an offense must be considered to determine whether it reflects on the lawyer's honesty, trustworthiness, or fitness as a lawyer. SCR 20:8.4(b).

¶62 This felony drunk driving conviction was apparently Attorney Johns' only drunk driving offense before or after the homicide. Nothing in the record before us indicates he has an alcohol-related problem. The district attorney's office had discretion whether to prosecute Attorney Johns. It prosecuted. The trial court had discretion in sentencing Attorney Johns for the homicide. It imposed jail time and probation.

3

¶63 As the per curiam opinion explains, drunk driving has been viewed differently by different courts in attorney discipline cases.[2]

¶64 Drunk driving is a major public safety issue in Wisconsin and across the country. According to the National Highway Traffic Safety Administration, in 2012 an average of one alcohol-impaired driving fatality occurred every 51 minutes.[3] In 2012, 10,322 people were killed in alcohol-impaired driving crashes.[4] All drivers are——or should be held to be——aware of the dangers of drunk driving. That drunk driving may be prosecuted as a crime is also common knowledge.

¶65 Attorney Johns was engaged in an evening of drinking with his family. His blood alcohol level tested way over the legal limit. He pled guilty to one count of homicide by use of a vehicle with a prohibited alcohol concentration. The one-vehicle accident resulting in the death of Attorney Johns' passenger/brother was a tragedy for the entire family. The tragedy did not end that night. The tragic aftermath includes a

---

[2] See also Alexandra Sorota & Shelley Lambert, Driving on the Wrong Side of the Road: How Lawyers are Sanctioned for Vehicular Homicide in New York and the District of Columbia, 15 Geo. J. Legal Ethics 865 (2002); Rachna K. Dhanda, When Attorneys Become Convicted Felons: The Question of Discipline by the Bar, 8 Geo. J. Legal Ethics 723 (1995).

[3] National Highway Traffic Safety Administration, U.S. Department of Transportation, DOT HS 811 870, Traffic Safety Facts: 2012 Data, available at http://www-nrd.nhtsa.dot.gov/Pubs/811870.pdf (last visited March 24, 2014).

[4] Id.

criminal prosecution, a felony conviction, jail time, probation, and this disciplinary action.

¶66 This case has to be considered, however, in the context of the scourge of drunk driving in our society. Although the totality of the circumstances of the isolated homicide in the instant case presents a very close discipline case——and my sympathies are with Attorney Johns and his family—— I would hold that the felony conviction constituted a violation of the Rules.

¶67 I would not, however, impose any discipline for this violation. The court has discretion whether to impose discipline. SCR 21.16. In light of the circumstances of the case, including Attorney Johns' stellar record for the last decade, discipline is not warranted.

C

¶68 This case, along with the two Osicka cases,[5] the Kratz[6] case, and rule petitions recently filed[7] and hearings on filed

---

[5] OLR v. Osicka, 2014 WI 33, ___ Wis. 2d ___, ___ N.W.2d ___, and OLR v. Osicka, 2014 WI 34, ___ Wis. 2d ___, ___ N.W.2d ___, mandated of even date. Although Justice Prosser joined in prior cases disciplining Attorney Osicka, Justice Prosser dissents, asserting that OLR is "piling up legal costs that it expects Osicka to pay. . . . These prosecutions raise questions about how OLR uses its limited resources to protect the public interest——questions about its priorities. Because the answers to questions of this sort are seldom addressed, I feel compelled to respectfully dissent." Osicka, 2014 WI 33, ¶___ (Prosser, J., dissenting).

[6] OLR v. Kratz, 2014 WI 31, ___ Wis. 2d ___, ___ N.W.2d ___, mandated of even date.

5

rules petitions involving the OLR, raises broader issues than those posed by these and other individual cases.

¶69 For example, the very prosecution of this case 10 years after the incident seems to have troubled the referee and is troubling the court, as is the wisdom of OLR's appeal. Delays in initiating and completing discipline cases are also evident in Osicka and Kratz. Other issues raised include OLR's discretion in charging, dismissing charges, and diversion; whether and what consideration is given in lawyer discipline to OLR's scarce resources; the extent to which the OLR should consider mercy, forgiveness, and the wishes of the victims; whether respondent lawyers should be able to appear before the Preliminary Review Committee; and whether the Preliminary Review Committee should be disbanded inasmuch as apparently over 90% of the OLR's recommendations are accepted.

¶70 The Kratz case raised the issue of the role of partisan politics and media publicity in discipline proceedings, as Justice Prosser's dissent points out. Members of the Court have also raised the question of the wisdom of changing the rules to allow plea bargaining. These are only some of the significant and troubling issues illustrated in these cases and

---

[7] See OLR's Board of Administrative Oversight and State Bar petition (Rule Petition 13-04) to amend the rules relating to referees in the lawyer regulation system; OLR's Board of Administrative Oversight and State Bar petition (Rule Petition 13-06) relating to stipulations in lawyer disciplinary proceedings; and OLR's Board of Administrative Oversight petition (Rule Petition 13-12) relating to public notice of formal investigations.

raised in rule petitions and the hearings on recent rule petitions.

¶71 On October 25, 2013, Keith Sellen appeared advocating a rule petition regarding lawyer discipline. I suggested to him that an impartial, objective review of OLR practices and procedures should be conducted.[8] Fifteen years have elapsed since the OLR system was instituted. Several anomalies and proposed amendments have been brought to the court's attention. I believe it is time for a review rather than piecemeal adjustments at this time. Keith Sellen, director of the OLR, agreed with the proposal for a review. Justices Ann Walsh Bradley, N. Patrick Crooks, and David T. Prosser expressed interest in and support for such a proposal at the October 2013 open rules petition conference.

¶72 Several pending rule petitions requesting changes in OLR's practices and procedures were the result of a review committee that the chair of the OLR Board of Administrative Oversight created at my suggestion.

---

[8] For a provocative, different view of state lawyer discipline systems (which are now modeled on criminal prosecutions), see Jenifer Gerarda Brown & Liana G.T. Wolf, The Paradox and Promise of Restorative Attorney Discipline, 12 Nevada L. J. 253 (2012). The authors suggest new therapeutic approaches including diversionary programs, deliberation and decision making by a diverse group of stakeholders, increased victim and public participation, and discussions that focus on repairing the damage caused by the offending attorney to build trust between attorneys and their clients, to foster professional conduct, to prevent ethical misconduct, to improve the morale of practicing lawyers, and to protect the public.

¶73 Instead of examining and adopting these proposals piecemeal, I advocated dealing with the subject matter of these rule petitions as well as other issues relating to OLR by an objective review of all OLR practices and procedures. A review by persons knowledgeable in and working in other state lawyer discipline systems might be a good first step. Other justices proposed different tacks, including appointing a committee of diverse stakeholders to determine the nature and course of the review. I was (and am) open to taking a different or broader approach than I originally explored.

¶74 The court has not resolved a proposal for such a review of the OLR disciplinary system. Some members of the court appeared to take the view that any such proposal was not germane to the subject of the petitions; that any such proposal was not itself a rules petition; and that consequently any proposal could not be discussed at an open rules petition conference without the court first authorizing an open discussion in closed conference.

¶75 I intend to continue to seek an open conference in which we can discuss instituting an impartial, objective review of OLR practices and procedures. Such a review is germane to all the pending rules petitions. In any event, I can and shall, if need be, draft a proposal in rules petition format if that's what it takes.

¶76 This matter should be discussed by the court in open conference, not behind closed doors. Lawyer discipline is of

8

great importance to the court, the lawyers in the state, and the public.

\* \* \* \*

¶77 For the reasons set forth, I do not join the per curiam opinion, and I write to urge an impartial, objective review of our lawyer discipline system.