**2025 WI 6**

# Supreme Court of Wisconsin



OFFICE OF LAWYER REGULATION,
*Complainant-Appellant,*

*v.*

OSMAN A. MIRZA,
*Respondent-Respondent.*

No. 2023AP2369-D
Decided February 27, 2025

ATTORNEY DISCIPLINARY PROCEEDING.

¶1 PER CURIAM. Attorney Osman Mirza stands convicted, upon his guilty plea, of one count of felony stalking and one count of misdemeanor criminal trespass to dwelling, both as acts of domestic abuse, with nine additional criminal counts dismissed but read in at sentencing. The Office of Lawyer Regulation (OLR) brought this disciplinary matter seeking to sanction Attorney Mirza for the acts underlying his criminal case. The OLR appeals from that portion of the referee's April 11, 2024 report recommending that the court suspend Attorney Mirza's Wisconsin law license for one year, effective October 30, 2023—the date of this court's order summarily suspending Attorney Mirza's license as a result of his conviction of a serious crime. *See* Supreme Court Rule (SCR) 22.20(1), (2). The OLR submits that the court should suspend Attorney Mirza's law license for 30 months, effective October 30, 2023. Attorney Mirza argues that the retroactive one-year suspension recommended by the referee is appropriate.

OLR *v*. MIRZA
Per Curiam

¶2      As explained below, it appears that both the parties and the referee have been unclear at times on the effect of the read-in charges on the issues at hand. This lack of clarity has made it difficult for the court to understand the scope of the OLR's sole misconduct claim, and to identify what facts the referee actually found and on what basis he made those findings. We therefore vacate the referee's April 11, 2024 report and remand this matter to the referee for further proceedings.

¶3      The factual and procedural background of this case is as follows. Attorney Mirza was admitted to practice law in Wisconsin in 2017. He most recently practiced law in the Milwaukee area. He has no prior disciplinary history. As mentioned above, on October 30, 2023, this court summarily suspended Attorney Mirza's Wisconsin law license pursuant to SCR 22.20(1) due to his criminal conviction, which is described more fully below. His license remains suspended.

¶4      The criminal case against Attorney Mirza began in Waukesha County Circuit Court in July 2020. The criminal complaint concerns Attorney Mirza's course of conduct between June 2018 and July 2020 toward his now ex-wife, S.E.S. (The marriage, which resulted in two minor children, ended in divorce in February 2021.) In an amended complaint, the State charged Attorney Mirza with eleven criminal counts: felony stalking, misdemeanor criminal trespass, two counts of misdemeanor battery, two counts of felony false imprisonment, one count of felony intimidation of a victim, and four counts of misdemeanor disorderly conduct. Each count carried the WIS. STAT. § 968.075(1)(a) domestic abuse modifier.

¶5      In April 2023, the State and Attorney Mirza reached a plea agreement. Attorney Mirza pled guilty to and was convicted of one count of felony stalking and one count of misdemeanor criminal trespass to dwelling, both as acts of domestic abuse, with the remaining nine other criminal counts dismissed but read in at sentencing. In July 2023, the circuit court sentenced Attorney Mirza to 12 months of jail, stayed for three years of probation, for the felony stalking conviction, and nine months of jail, stayed for two years of probation, for the criminal trespass conviction. The circuit court ordered the sentences to run concurrently to each other.

¶6      Attorney Mirza's criminal conviction formed the basis for the OLR's August 2023 motion to summarily suspend his license pursuant to SCR 22.20, which, as mentioned, this court granted in October 2023. Soon thereafter, the OLR filed a disciplinary complaint alleging a single count of misconduct against Attorney Mirza. It states:

By engaging in a course of conduct toward SES that led to him pleading guilty to felony Stalking (WIS. STAT. § 940.32(2)) and misdemeanor Criminal Trespass to Dwelling (WIS. STAT. § 943.14 (2)), both with the domestic abuse modifier (WIS. STAT. § 968.075(1)(a)), and also with charges of:

a.      Count Two - Misdemeanor Battery (Domestic Abuse),

b.      Count Three - Felony False Imprisonment, (Domestic Abuse),

c.      Count Four - Felony Intimidation of a Victim, (Domestic Abuse),

d.      Count Six - Misdemeanor Disorderly Conduct, (Domestic Abuse),

e.      Count Seven - Misdemeanor Battery, (Domestic Abuse),

f.      Count Eight - Felony False Imprisonment, (Domestic Abuse),

g.      Count Nine - Misdemeanor Disorderly Conduct, (Domestic Abuse),

h.      Count Ten - Misdemeanor Disorderly Conduct, (Domestic Abuse), and

i.      Count Eleven - Misdemeanor Disorderly Conduct, (Domestic Abuse)

being read-in, whereby they were dismissed but Mirza agreed that they could be considered by the Circuit Court for purposes of sentencing, Mirza violated SCR 20:8.4(b).

¶7      The rule of professional conduct cited by the OLR, SCR 20:8.4(b), provides that "[i]t is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The OLR asked the court "to impose an appropriate level of discipline" for Attorney Mirza's alleged violation of this rule.

¶8      On January 19, 2024, Attorney Mirza filed an answer to the OLR's complaint in which he denied committing any professional misconduct and raised various affirmative defenses.

¶9      This court appointed Referee Charles H. Barr to act as the referee in this matter. The referee held an evidentiary hearing on March 13, 2024. The OLR called Attorney Mirza as its only witness. Attorney Mirza called six witnesses to testify about his character. At the hearing, the OLR argued for a 30-month suspension of Attorney Mirza's law license. Attorney Mirza argued for a six-month suspension.

¶10      Much of the confusion that now appears in the filings before the court seems to have its genesis in the following exchange between the referee and the parties at the disciplinary hearing.

[REFEREE]:   [F]or the underlying criminal act under Rule 8.4(b), is the OLR proceeding only on the conviction on Counts I [stalking] and V [criminal trespass to dwelling]? Or is it relying also on the criminal acts alleged in the read[-in] counts, which are the rest of the eleven counts?

[OLR COUNSEL]:   It's a nuanced answer. There are two criminal convictions. Under the rule, those criminal convictions are conclusive as to guilt for those crimes. The other charges that were dismissed but read in, which means that the trial court was allowed to use them for purposes of sentencing, are relevant. . . . And so we're not relying on the read-in offenses as being independent 8.4(b) violations, but they are relevant for purposes of sanction.

[REFEREE]:   Okay. Mr. Mirza, do you have anything to add on that?

MR. MIRZA:   I would just object that those facts related to the read-in charges not being contemplated within the actual convictions as they are [sic]. And notably, this matter is set for an appeal in the Wisconsin Court of Appeals, District 2, 2024 AP 176. That being said, and subject to my objection as to whether or not they're relevant, I would understand that the referee would be able to consider those in fashioning a[n] appropriate sanction.

[THE REFEREE]: Okay. I think you're in agreement on that.

¶11 Consistent with this discussion, the referee wrote the following in his April 11, 2024 report:

> The role of the nine read-in charges requires discussion. Attorney Mirza did not directly admit those charges. *See State v. Sulla*, 2016 WI 46, ¶39, 369 Wis. 2d 225, 880 N.W.2d 659 ("'*no admission of guilt* from a defendant . . . *is required (or should be deemed) for a read-in charge to be considered for sentencing purposes . . . .*'") (quoting *State v. Straszkowski*, 2008 WI 65, 5, 310 Wis. 2d 259, 750 N.W.2d 835). Consistently with that rule, OLR's counsel stated at the evidentiary hearing that it does not rely on the read-in charges to establish a violation of SCR 20:8.4(b) but contends they are relevant to sanctions. I consider them for that purpose and also note that the stalking charge to which Attorney Mirza did admit is an overarching charge, the factual basis of which encompasses the factual bases of all the other charges, including the read-in charges. (*See* Complaint, ¶6 at 2 and Exs. A and B.) Accordingly, Attorney Mirza's admissions both in the criminal case and at the evidentiary hearing in the instant case, while arguably not a word-for-word admission of the read-in charges, effectively admit at least in substantial part the factual allegations underlying them.[1]

¶12 Later in his report, citing both the OLR's complaint and the amended criminal complaint it attached, the referee wrote:

> A chronological distillation of Attorney Mirza's conduct, as described in the eleven counts of the amended criminal complaint, is as follows:

---

[1] We pause here to note that Attorney Mirza's guilty plea to stalking did not necessarily constitute an admission of all the conduct alleged in his read-in charges. *See* WIS. STAT. § 940.32(1)(a) (1.-10.)(listing acts that can satisfy the course-of-conduct element of stalking).

- Summer 2018: downloaded an app on S.E.S.'s phone that allowed him to track her location and incoming and outgoing text messages. (Complaint, 16 at 2 and Ex. A at 4.)

- October 20, 2019: twice forcibly entered or attempted to enter a locked room where S.E.S. and their children were sleeping. (*Id.*, Ex. A at 15-16.)

- January-February 2020: showed up at public places and attempted to intimidate men who were socializing with S.E.S. not to date her, stating that he was a lawyer in Milwaukee, and at least on one occasion forcibly grabbed S.E.S.; texted vulgar statements to S.E.S. (*Id.*, Ex. A at 5-6.)

- February 11, 2020: forcibly tried to remove S.E.S. from her vehicle while calling her vile names, and threw his shoes at the vehicle. (*Id.*, Ex. A at 13-14.)

- March 8, 2020: telephoned S.E.S. with threats of violence and vulgar statements. (*Id.*, Ex. A at 6.)

- Between March 20 and 25, 2020: struck S.E.S. in the mouth, grabbed her wrists, threatened to break her arms, physically restrained her from leaving, told her not to call police or they would both get in trouble, pinned her down, and forced her to repeat vulgar statements. (*Id.*, Ex. A at 6-7.)

- March 30, 2020: entered S.E.S.'s home twice without her consent; exposed his genitals and threatened to "tag team" S.E.S. with another male who was present; sent S.E.S. vulgar texts; called her vulgar names in the presence of others; and flipped her over the back of a couch, causing her to land on her head and neck and resulting in severe headaches and neck pain. (*Id.*, Ex. A at 7-8.)

- April 13, 2020: withheld children from S.E.S. unless she had sex with him; pinned her down by her arms, again threatened to break her arms, prevented her from leaving his home, and forced her to stay the night. (*Id.*, Ex. A at 8.)

• April 30, 2020: texted degrading messages and inappropriate photographs of S.E.S. to their son's phone. (*Id.*, Ex. A at 9.)

• June 15, 2020: phoned S.E.S.'s brother and screamed at him, calling S.E.S. vulgar names and threatening violence against her. (*Id.*, Ex. A at 10.)

• July 17, 2020: texted S.E.S.'s aunt, calling S.E.S. derogatory names, attempting to shame her family for allowing her to seek divorce, and making derogatory statements about S.E.S.'s private life. (*Id.*)

• July 18, 2020: walked around S.E.S.'s home looking into windows late at night without her knowledge or consent. (*Id.*, Ex. A at 11.)

¶13  Ultimately, the referee concluded that the OLR had proven a violation of SCR 20:8.4(b) and that a one-year license suspension, retroactive to the October 30, 2023 summary suspension date, would be appropriate.

¶14  The OLR appealed, challenging the referee's recommended one-year, retroactively imposed sanction as insufficient. In its appellate briefing, the OLR stated that it "filed this appeal because there is a disconnect between the referee's Findings of Fact and Conclusion of Law on one hand and his recommended sanction on the other." The OLR offered the following factual summation:

The facts are appalling. Over a two-year period, Mirza tracked and threatened his wife. He forcibly grabbed and restrained her, flipped her over a couch, struck her in the mouth, pinned her down, threw objects at her and threatened to break her arms. He forcibly entered locked rooms where she and their children were asleep and entered her home without her consent. He intimidated her and her social friends. He called her vulgar names to her face and to her family and their children. He texted degrading messages about her and inappropriate photographs of her to their son's phone. He threatened her and her family in vulgar tirades. And he walked around her home at night, looking into her windows, without her knowledge. This amounts to a two-

year period during which Mirza repeatedly victimized his wife in some of the most terrifying means possible.

¶15     Given these "egregious and reprehensible" actions, the OLR asserted that a 30-month suspension is needed.

¶16     In his appellate briefing, Attorney Mirza defended the referee's report and recommendation for a one-year suspension retroactive to October 30, 2023. In doing so, Attorney Mirza took seemingly conflicting positions regarding the accuracy and scope of the referee's factual findings. On the one hand, Attorney Mirza wrote that he "does not challenge the referee's Finding of Facts concerning Attorney Mirza's conduct between June 2018 and July 18, 2020, as summarized in his Report," and that "[t]he referee's Findings of Fact, Conclusions of Law, and Recommendation on the allegation of misconduct are sound via clear, convincing and satisfactory evidence." At the same time, Attorney Mirza took care to note that he never directly admitted the read-in charges, and he suggested that at least some of the allegations underlying them are inaccurate.

¶17     On December 11, 2024, after reviewing the parties' appellate briefing, this court ordered the parties to address two questions: (1) whether all of the acts described in the referee's report, quoted in ¶12 above, should be deemed admitted for purposes of this matter; and (2) whether all of those acts should be included in the basis for the SCR 20:8.4(b) violation alleged in Count 1.

¶18     The parties took divergent positions. The OLR answered both questions "yes." It noted that its SCR 20:8.4(b) claim in its disciplinary complaint included the read-in charges. It stated that "[i]n the course of the . . . disciplinary proceeding, OLR introduced Mirza's other conduct in the form of the offenses that had been read in at his plea hearing. At the disciplinary hearing in this case, Mirza did not deny that other conduct." It claimed it presented "substantial compelling evidence of the conduct related to Mirza's read-in charges." It claimed that the referee made findings regarding the facts underlying both Attorney Mirza's counts of conviction and his read-in charges, and that "[t]he record contains ample basis for the referee's findings both from OLR's Complaint and from the Amended Criminal Complaint attached thereto." The OLR also insisted that Attorney Mirza did not meaningfully challenge the referee's factual findings in his appellate briefing, and thus any effort by him to do so now should be defeated by waiver.

¶19    For his part, Attorney Mirza answered both questions "no." He argued that only the acts underlying his two counts of conviction (stalking and trespassing) should be deemed admitted for purposes of this matter or included in the basis for the claimed SCR 20:8.4(b) violation—though he did not identify what facts he agrees underlie these convictions.[2] He noted that the OLR itself told the referee during the disciplinary hearing that it was not relying on the read-in charges to establish a violation of SCR 20:8.4(b) and viewed them as only "relevant for purposes of sanction." He insisted that "[n]one of the factual allegations [of the] dismissed and read-in counts were scrutinized at a trial, or admitted under Mirza's plea, or directly admitted at the evidentiary hearing, or allowed for consideration beyond sentencing by the trial court." Attorney Mirza also argued that the dismissal of the read-in charges means that he is immune from discipline for any underlying acts, such that any evidence of these acts must be "excluded." As for any language in the referee's report that could be read to adopt as fact the entire course of conduct alleged in the criminal complaint, Attorney Mirza claims that the referee was only describing the complaint's allegations, not the facts of his conduct.

¶20    After reviewing the record and the parties' briefing, it is clear that counsel and the referee are not on the same page with respect to the effect of the read-in charges on the issues at hand. The OLR has taken inconsistent positions on whether the acts underlying the read-in charges are included in the basis for its SCR 20:8.4(b) violation. Attorney Mirza goes so far as to claim that he is categorically immune from discipline for such acts. And both parties take conflicting positions as to what facts the referee actually found and on what basis he made those findings.

¶21    Under these circumstances, we elect to vacate the referee's report and remand the matter to the referee. On remand, the referee has discretion to reopen the record to allow both parties to present any additional evidence necessary to permit the referee to make adequate findings.

¶22    To aid the parties and the referee on remand, we direct them to our decision in *Matter of Disciplinary Proceedings Against Ritland*, 2021 WI

---

[2] We note that the criminal complaint against Attorney Mirza contains a 13-page probable cause section in support of all 11 charges against him. It does not specify which acts formed the basis of his two-year course of stalking behavior.

36, 396 Wis. 2d 509, 957 N.W.2d 540. There, the respondent-attorney pled no contest to, and was convicted of, two counts of a rarely prosecuted misdemeanor crime (attempted adultery) and one count of misdemeanor disorderly conduct. More serious charges (four felony counts of solicitation of prostitution, one felony count of maintaining a drug trafficking place, and four misdemeanor counts of prostitution) were dismissed and read-in for sentencing purposes. *Id.*, ¶15. The OLR brought a one-count complaint alleging an SCR 20:8.4(b) violation.

¶23    In analyzing the SCR 20:8.4(b) claim, we wrote:

We . . . reject any attempt by Attorney Ritland to argue that the outcome of his criminal case, which included the dismissal of the most serious charges against him, requires this court to close its eyes to what the OLR proved Attorney Ritland had done. Supreme Court Rule 20:8.4(b) provides that it is professional misconduct to "[c]ommit a criminal *act* that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." (Emphasis added.) The rule does not require that an attorney actually have been convicted of a crime for the rule to apply; we discipline for conduct, not convictions. *See In re Disciplinary Proceedings Against Inglimo*, 2007 WI 126, ¶47 n.12, 305 Wis. 2d 71, 740 N.W.2d 125 ("[A]n attorney's criminal act can support a SCR 20:8.4(b) violation even if the attorney is never charged or convicted.") Thus, an SCR 20:8.4(b) violation may be found—even absent a conviction—if the record contains clear, satisfactory, and convincing evidence that the attorney engaged in criminal acts that reflect adversely on his or her fitness to practice. *See, e.g., In re Disciplinary Proceedings Against Peterson*, 2006 WI 41, 290 Wis. 2d 74, 713 N.W.2d 101 (affirming an SCR 20:8.4(b) violation where the sole factual basis was an attorney's use of cocaine). Relatedly, we have held that a conviction alone—even a very serious one—does not necessarily demonstrate an attorney's unfitness to practice. *See In re Disciplinary Proceedings Against Johns*, 2014 WI 32, 353 Wis. 2d 746, 847 N.W.2d 179 (finding no SCR 20:8.4(b) violation despite an attorney's conviction for the vehicular homicide of his brother in light of evidence showing the exceedingly anomalous nature of the attorney's conduct and his full acceptance of responsibility for its tragic consequences).

Thus, whether Attorney Ritland's conduct violated SCR 20:8.4(b) is a "fact dependent inquiry," driven by the facts established in this disciplinary proceeding. *See In re Disciplinary Proceedings Against Horsch*, 2020 WI 10, ¶11, 390 Wis. 2d 99, 937 N.W.2d 925. To the extent that Attorney Ritland believes that the State's dismissal of certain charges automatically immunizes the conduct proven here from professional discipline, he is mistaken.

*Ritland*, 396 Wis. 2d 509, ¶¶27-28.

¶24    *Ritland* makes clear that the dismissal and reading in of charges does not affect the viability of an SCR 20:8.4(b) claim based on those charges. Our duty to protect important public interests that are not addressed by any criminal proceeding underlying an SCR 20:8.4(b) claim compels this result. *See, generally, In the Matter of Disciplinary Proceedings Against Rabideau*, 102 Wis. 2d 16, 26–27, 306 N.W.2d 1 (1981). We of course do not know why the prosecutor in Attorney Mirza's criminal case elected to dismiss and read in nine charges against him. But we do know that prosecutors generally may elect to do so for any number of reasons unrelated to whether a defendant committed a criminal act. Thus, the dismissal and reading in of criminal charges against an attorney is no guarantee of that attorney's moral fitness or professional competence, which we are responsible for supervising. Similarly, even if Attorney Mirza had been acquitted of the charged crimes, that would only signify the existence of reasonable doubt, not the absence of clear, satisfactory, and convincing evidence—the burden of proof applicable here. *See* SCR 22.16(5). This is why we must discipline for the conduct proven in disciplinary proceedings, not for convictions in criminal proceedings. *See Ritland*, 396 Wis. 2d 509, ¶¶27-28.

¶25    The dismissal and reading in of charges does, however, affect the proof necessary for an SCR 20:8.4(b) claim. Because a conviction constitutes conclusive evidence of a lawyer's guilt of a crime, *see* SCR 22.20(5), Attorney Mirza's stalking and trespass convictions absolved the OLR from having to prove his commission of the acts underlying them. However, because Attorney Mirza's read-in charges did not result in convictions, the OLR is required to prove the acts underlying them to a clear, satisfactory, and convincing degree. *See Ritland*, 396 Wis. 2d 509, ¶27 ("[A]n SCR 20:8.4(b) violation may be found—even absent a conviction—if the record contains clear, satisfactory, and convincing evidence that the attorney engaged in criminal acts that reflect adversely on his or her fitness

to practice."); *see also id.*, ¶28 ("[W]hether Attorney Ritland's conduct violated SCR 20:8.4(b) is a 'fact dependent inquiry,' driven by the facts established in this disciplinary proceeding.")(citation omitted).

¶26    It is not clear that the parties and the referee fully appreciated the above points. In particular, in suggesting to the referee that the read-in charges could be viewed as "relevant for purposes of sanction," the OLR seemed to confuse its role at the disciplinary hearing with a prosecutor's role at a criminal sentencing involving read-in charges. At such a criminal sentencing, the State and the defendant effectively strike a bargain:  the State preserves resources by not having to prove the read-in charges while still having them considered at sentencing, while in exchange the defendant is guaranteed that he or she will only receive, at most, the maximum sentence on the counts of conviction, and will receive immunity from future criminal prosecution of any read-in charges. *See State v. Frey*, 2012 WI 99, ¶¶69-74, 343 Wis. 2d 358, 817 N.W.2d 436. The OLR seemed to believe that the essence of the criminal read-in procedure would apply here, in this disciplinary matter:  this court would accept as true the factual allegations underlying the read-in charges,[3] but would only use them to heighten the sanction owed for Attorney Mirza's SCR 20:8.4(b) violation related to his two counts of conviction. As OLR counsel put it at the disciplinary hearing:

> Attorney Mirza pled guilty. He had a full colloquy. He acknowledged that the Court could rely on . . . the amended criminal complaint, and the second amended information, and agreed that the trial court, for purposes of sentencing, which could have impacted his liberty, the Court could rely on the read-ins.
>
> The same thing goes in this case. The Supreme Court can rely--and the referee can rely on both the two counts that were charged and pled, but also look at the read-ins for purposes of determining the appropriate sanction.

¶27    This is incorrect. The read-in procedure is "a sentencing mechanism that is often used in plea negotiations" in criminal cases. *Id.*,

---

[3] Although the OLR claimed in its briefing to us that it "presented substantial compelling evidence of the conduct related to Mirza's read-in charges," it provided no record citation for that proposition.

¶64. It has no analog in the disciplinary context, where plea bargaining is disallowed. *See In re Disciplinary Proceedings Against Inglimo*, 2007 WI 126, ¶85, 305 Wis. 2d 71, 740 N.W.2d 125. There is no authority in the disciplinary context for this court to rely on unproven misconduct to impose a more severe sanction for proven misconduct. We discipline for facts found in the disciplinary proceeding, not for facts assumed to be true elsewhere. *See Robinson v. City of West Allis*, 2000 WI 126, ¶43, 239 Wis. 2d 595, 619 N.W.2d 692 ("The sentencing court performs no adjudication of the read-in charges, and it cannot be said that any issues are actually and necessarily determined.").

¶28 Thus, to the extent the OLR intends to include the facts underlying Attorney Mirza's read-in charges in the basis for its SCR 20:8.4(b) claim, it must prove them by clear, satisfactory, and convincing evidence. *See Ritland*, 396 Wis. 2d 509, ¶27. If the OLR is able to do so—by evidence, stipulation, or admission—this court will view that behavior as sanctionable misconduct in and of itself, not as a mere sanction-enhancer for other misconduct. This approach is consistent with the OLR's complaint, with our precedent, and with our ethical obligations; if the allegations of violent and degrading behavior underlying Attorney Mirza's read-in charges are proven, doing otherwise would abdicate our duty to protect the bar's integrity. If, however, the OLR is unable to prove the acts underlying the read-in charges, then the court will not consider them in its disciplinary determination.

For the above reasons,

¶29 IT IS ORDERED that the referee's April 11, 2024 report is vacated, and this matter is remanded to the referee for further proceedings. On remand, the referee has discretion to reopen the record to allow both parties to present any additional evidence necessary to permit the referee to make adequate findings.